T.C. Memo. 2020-2

UNITED STATES TAX COURT

TRIBUNE MEDIA COMPANY f.k.a. TRIBUNE COMPANY
& AFFILIATES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CHICAGO BASEBALL HOLDINGS, LLC, NORTHSIDE ENTERTAINMENT
HOLDINGS, LLC, f.k.a. RICKETTS ACQUISITION, LLC, TAX MATTERS
PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20940-16, 20941-16.          Filed January 6, 2020.

R examined returns filed by Ps. During the examination,
discussions were held regarding the potential assertion of penalties.
Some of those discussions were within the IRS, and others included
Ps. R provided documents to Ps proposing, but not determining,
penalties. Penalties were determined in a notice of deficiency (NOD)
and a notice of final partnership administrative adjustment (FPAA).

The parties filed cross-motions for partial summary judgment
regarding whether the determination of penalties was properly
approved under I.R.C. sec. 6751(b)(1). Ps argue that supervisory
approval must occur before penalties are first proposed. R argues that
approval in fact occurred when penalties were first set forth in a
notice of proposed adjustment. R further argues that approval was

[*2] timely because it occurred before the NOD and the FPAA were issued.

In Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016), we followed the holding in Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42, that I.R.C. sec. 6751(b)(1) requires supervisory approval of a penalty "no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty." In Clay v. Commissioner, 152 T.C. 223, 249 (2019), we held that supervisory approval must occur no later than the first "communication that advises the taxpayer that penalties will be proposed and giving the taxpayer the right to appeal".

Held: I.R.C. sec. 6751(b)(1) does not require written supervisory approval of penalties until the first formal communication to the taxpayer that the Commissioner has determined a penalty.

Held, further, on the facts of these cases, the first formal communications in which the Commissioner communicated his determination of penalties with regard to Ps were the NOD and the FPAA that concluded the examinations.

Held, further, R's motion for partial summary judgment will be granted in part.

Held, further, Ps' motion for partial summary judgment will be denied.

Joel V. Williamson, Thomas Lee Kittle-Kamp, Peter M. Price, Anthony D. Pastore, and Daniel S. Emas, for petitioners.

Justin Scheid, for respondent.

**[*3]**                                MEMORANDUM OPINION

BUCH, <u>Judge</u>:  In 2009 Tribune Media Co. (Tribune) engaged in a transaction that resulted in the formation of Chicago Baseball Holdings, LLC (CBH).  The Commissioner characterizes the transaction as a disguised sale and determined a deficiency for Tribune and adjustments for CBH.  Additionally, the Commissioner determined that a 40% gross valuation misstatement penalty applies under section 6662(a), (b)(3), (e), and (h), or in the alternative that one of the 20% penalties applies for negligence, disregard of rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement under section 6662(a), (b)(1), (2), or (3), (c), (d), or (e) (20% penalties).[1]  Each party has moved for partial summary judgment in each case on the question of whether the Commissioner complied with the section 6751(b)(1) requirement to obtain written supervisory approval of the initial determinations of the penalties and, more specifically, whether that approval was timely.  For the reasons set forth below, we will grant the Commissioner's motion as to the 40% gross valuation misstatement

_____

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  All amounts are rounded to the nearest whole dollar.

**[*4]** penalties and deny it as to the various 20% penalties. We will deny Tribune and CBH's motion in full.

## Background

These cases arise from the Commissioner's examinations of the returns filed by Tribune and CBH for tax year 2009. Tribune filed a petition challenging the Commissioner's notice determining a deficiency of $181,661,831 and a gross valuation misstatement penalty of $72,664,732. The tax matters partner of CBH filed a timely petition challenging the Commissioner's notice of final partnership administrative adjustment (FPAA) regarding CBH, which also determined the applicability of a 40% gross valuation misstatement penalty. Both notices determined that the 20% penalties for negligence, disregard of rules or regulations, substantial understatement of income tax, or substantial valuation misstatement applied in the alternative. We consolidated the cases.

The Commissioner moved for partial summary judgment, asking the Court to determine that he had complied with the supervisory approval requirement of section 6751(b)(1). Tribune and CBH likewise filed a motion for partial summary judgment, asking us to determine that the Commissioner did not comply with section 6751(b)(1). The parties have stipulated many of the relevant facts, and each argues that no material facts are in dispute.

**[*5]** Various Internal Revenue Service (IRS) or IRS Office of Chief Counsel employees were involved in the examination. The parties focused on four. Revenue Agent H. Paul Unger was the examination team coordinator. His immediate supervisor was Lisa Valdez, a supervisory revenue agent. They were advised by Daniel Trevino, an attorney with the IRS Office of Chief Counsel, and his immediate supervisor was Associate Area Counsel Naseem Khan.

I.    Tribune

During the examination of Tribune's return, Mr. Unger first recommended determining a 20% penalty against Tribune alternatively for negligence, disregard of rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement. He made this recommendation orally to Ms. Valdez in December 2014.

Tribune first became aware that the Commissioner was considering imposing penalties during a meeting in January 2016. At this meeting the parties discussed adjustments to Tribune's return, and Mr. Trevino informed representatives of Tribune that the Commissioner would apply a penalty to any underpayment determined for 2009. Mr. Trevino's notes about topics discussed at the meeting state: "Applying penalties. Have not ruled any out."

**[*6]**  Penalties were first proposed in writing in a draft Form 5701, Notice of Proposed Adjustment (NOPA).  In early 2016 Mr. Unger drafted a NOPA for Tribune asserting in the alternative the various 20% penalties.  He sent the draft to IRS Counsel for review and advice.  Upon reviewing the draft NOPA, Mr. Trevino recommended also asserting as an additional alternative the gross valuation misstatement penalty.  He made this recommendation orally to his immediate supervisor, Ms. Khan, in February 2016.  Mr. Unger ultimately adopted this recommendation when he prepared the final NOPA that was sent to Tribune.

The NOPA identifies the taxpayer, tax year, and date; contains the typed text "Valdez, Liza F" in the box for Team Manager; and states:  "See attached 886/Amount to be finalized on RAR after all adjustments."  Ms. Valdez's name is typewritten on the bottom of the Tribune NOPA.  The NOPA states:

> Based on the information we now have available and our discussions with you, we believe the proposed adjustment listed below should be included in the revenue agent's report.  However, if you have additional information that would alter or reverse this proposal, please furnish this information as soon as possible.

On March 31, 2016, the Commissioner sent that NOPA with an attached Form 886-A, Explanations of Items, to Tribune proposing the 40% gross valuation misstatement penalty or, alternatively, the various 20% penalties.  The

**[\*7]** Commissioner did not send a 30-day letter granting Tribune the opportunity to appeal the determinations in the NOPA.

Ms. Valdez signed a Form 3198, Special Handling Notice for Examination Case Processing, on April 21, 2016, showing a section 6662(h) penalty (the 40% gross valuation misstatement penalty). The form did not show any alternative penalties but was accompanied by the case file. Ms. Valdez testified at deposition that Mr. Unger prepared the Tribune Form 3198 and that she reviewed and signed it.

The notice of deficiency was sent to IRS Counsel for review. On June 28, 2016, Ms. Khan electronically signed a memorandum approving the proposed notice of deficiency for Tribune. The notice included the 40% penalty and, alternatively, the various 20% penalties. The Commissioner sent the final notice of deficiency to Tribune on June 28, 2016, the same day as Ms. Khan's approval. The notice of deficiency bears an unidentifiable signature with the notation that it was made for Brian Atkinson. It attaches a Form 4549-A, Income Tax Examination Changes (Unagreed and Excepted Agreed). That Form 4549-A identifies the examiner as Keith Muldrow.

[*8] II.    CBH

Mr. Unger first recommended that a 20% penalty for negligence, disregard of rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement be applied to the adjustments for CBH.  He made that recommendation in writing in December 2015 to his immediate supervisor, Ms. Valdez.  CBH first became aware that the Commissioner intended to impose a penalty during a conference call held in February 2016.

As with Tribune, Mr. Unger sent a draft NOPA asserting in the alternative the various 20% penalties for CBH to Mr. Trevino for review in February of 2016. Mr. Trevino recommended that a 40% gross valuation misstatement penalty also be applied in the alternative to the CBH adjustments.  He made that recommendation orally to Ms. Khan.

Mr. Unger did not adopt Mr. Trevino's suggestion when he prepared the NOPA that would be provided to CBH.  The Commissioner sent a NOPA to CBH in March 2016.  That notice proposed, in the alternative, a 20% penalty for negligence, disregard of rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement but did not mention the 40% gross valuation misstatement penalty.  As with the NOPA issued to Tribune, the CBH NOPA stated:

[*9]   Based on the information we now have available and our discussions with you, we believe the proposed adjustment listed below should be included in the revenue agent's report.  However, if you have additional information that would alter or reverse this proposal, please furnish this information as soon as possible.

The Commissioner did not send CBH a letter granting the opportunity to appeal the determinations in the NOPA.

Two NOPAs dated March 31, 2016, regarding CBH appear in the record. On one, the handwritten notation "F5701 for Penalty" appears.  On the other, it does not.  The version CBH received did not have the handwritten note.  Both versions of the NOPA were prepared by Mr. Unger and included Ms. Valdez's name in the box labeled "Team Manager".  In her deposition, Ms. Valdez testified that this shows her approval.  However, Ms. Valdez also testified that Mr. Unger may have typed her name in that box and that it was not her electronic signature.

The FPAA was then prepared for issuance.  Ms. Valdez signed a Form 3198 in June 2016 closing the case out to technical services.  The form did not list any penalties but was accompanied by the case file.  Before the FPAA was issued to CBH, a draft FPAA that included all of the alternative penalties at issue was forwarded to the IRS Office of Chief Counsel for review.  In a memorandum dated June 28, 2016, Ms. Khan stated her approval of the proposed FPAA, which

[*10] included the 40% gross valuation misstatement penalty in addition to the various 20% penalties in the alternative.

Finally, the Letter 1830-F, TMP Notice of Final Partnership Administrative Adjustment, also dated June 28, 2016, informed CBH that the Commissioner had determined that a 40% gross valuation misstatement penalty applied to the adjustments. The notice also determined the various 20% penalties in the alternative. That notice purports to have been signed by Emil Pikul for Heather Yocum. It attaches a Form 4605-A, Examination Changes - Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations (Unagreed and Excepted Agreed). That Form 4605-A is unsigned and does not identify who prepared it.

## Discussion

The question before the Court is whether the Commissioner's penalty determinations complied with section 6751(b)(1). That question requires us to decide whether the initial determination of each penalty in each case was timely approved in writing by the immediate supervisor of the person making the determination. The parties agree as to who the immediate supervisors were. Who made the initial determinations, when they were made, and whether certain

**[\*11]** documents are sufficient evidence of written approval are questions of fact. When written approval was required is a question of law.

I.      Jurisdiction and Burden of Proof

We have jurisdiction to redetermine a deficiency if a taxpayer files a timely petition challenging a notice of deficiency. Sec. 6213(a). Our jurisdiction includes the authority to redetermine any penalties or additions to tax. Sec. 6214(a). Similarly, we have jurisdiction to readjust the adjustments made in an FPAA if a timely petition is filed. Sec. 6226(a). This jurisdiction includes the authority to determine all partnership items and "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." Sec. 6226(f).

As part of our jurisdiction to redetermine whether a penalty applies, we have jurisdiction to review whether the Commissioner complied with the supervisory approval requirement of section 6751(b)(1). In Graev v. Commissioner (Graev III), 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016), we held that section 6751(b)(1) compliance is properly in issue in a deficiency proceeding. We applied the same reasoning to a TEFRA partnership proceeding and held that when penalties are asserted in an FPAA, section 6751(b)(1) compliance may be properly in issue in that proceeding. Endeavor

[*12] <u>Partners Fund, LLC v. Commissioner</u>, T.C. Memo. 2018-96, at *63, <u>aff'd</u>, 943 F.3d 464 (D.C. Cir. 2019).

Generally, the Commissioner's determinations in a notice of deficiency or in an FPAA are afforded a presumption of correctness and the taxpayer bears the burden of proving the determinations incorrect. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). In a proceeding regarding the liability of an individual for a penalty, the Commissioner has the burden of production as to the penalty. Sec. 7491(c). The Commissioner generally bears the burden of production as to any penalty or addition to tax imposed on an individual but not as to one imposed on a corporation. Sec. 7491(c); <u>NT, Inc. v. Commissioner</u>, 126 T.C. 191 (2006). This burden of production requires the Commissioner to "come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).

But because the Commissioner does not bear the burden of production under section 7491(c) as to penalties imposed on a corporation, he also does not usually bear the burden of production as to section 6751(b)(1) approval for a penalty determined against a corporation. <u>Dynamo Holdings Ltd. P'ship v. Commissioner</u>, 150 T.C. 224, 231-232 (2018). Likewise, the Commissioner does not usually bear the burden of production as to penalties, including as to section

**[*13]** 6751(b)(1) approval, in a partnership-level proceeding. Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. at 236.

II.     Summary Judgment

Either party may move for summary judgment on any or all of the legal issues in controversy. Rule 121(a). We may grant summary judgment only if there is no genuine dispute as to any material fact. Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 528-529 (1985). The moving party bears the burden of proving that there is no genuine dispute and that it is entitled to judgment as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). When deciding whether to grant summary judgment, we consider the facts and the inferences drawn from them in the light most favorable to the nonmoving party. FPL Grp., Inc. v. Commissioner, 115 T.C. 554, 559 (2000); Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. at 529. However, the nonmoving party may not rest on mere allegations or denials but must set forth specific facts showing that there is a genuine dispute for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Sundstrand Corp. v. Commissioner, 98 T.C. at 520; see also Rule 121(d).

III.    Section 6751(b)(1)

Section 6751(b)(1) provides:

**[*14]** No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

Congress enacted section 6751(b)(1) because of concerns that the IRS used penalties as mere leverage in negotiations. A Senate Finance Committee Report explains Congress' rationale in enacting this provision. "The Committee believes that penalties should only be imposed where appropriate and not as a bargaining chip." S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601. It was further explained: "In order to prevent IRS employees from arbitrarily using penalties as leverage against taxpayers, our legislation requires non-computer determined penalties to be approved by management." 144 Cong. Rec. 7627, 7873 (1998).

In Graev III we decided when the Commissioner must obtain approval of the initial determination to impose a penalty. The Commissioner argued that approval could occur at any time, even after a proceeding in this Court, and as a result, it would be premature for us to consider section 6751(b)(1) in a deficiency proceeding. We held that we have jurisdiction in a deficiency proceeding to consider compliance with section 6751(b)(1). Graev III, 149 T.C. 485.

In deciding Graev III, we relied heavily on the Court of Appeals for the Second Circuit's opinion in Chai v. Commissioner, 851 F.3d 190 (2d Cir. 2017),

**[\*15]** aff'g in part, rev'g in part T.C. Memo. 2015-42. In that case, the Court of Appeals held that section 6751(b)(1) "requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty." Chai v. Commissioner, 851 F.3d at 221 (emphasis added); see also Endeavor Partners Fund, LLC v. Commissioner, T.C. Memo. 2018-96, at \*63 (applying the same rationale to an FPAA). In reaching its conclusion, the Court of Appeals considered the practicality of providing written approval. Approval is meaningful only if obtained when the supervisor has the discretion to give or withhold it. See Chai v. Commissioner, 851 F.3d at 220. The court identified the last moment when approval might be required. In these cases, we are asked whether approval might be required earlier.

A.    Initial Determinations

On April 24, 2019, we issued our Opinion in Clay v. Commissioner, 152 T.C. 223 (2019). In Clay, we addressed the issue of whether section 6751(b)(1) might require approval at a time before the Commissioner issues a notice of deficiency. We held that it could: Section 6751(b)(1) requires written supervisory approval of the initial determination no later than the earlier of (1) when it is communicated to the taxpayer in the form of a notice of deficiency or (2) when

**[*16]** another form of formal communication is sent to the taxpayer that both advises it that penalties were determined and gives the taxpayer the opportunity to appeal that determination. Clay v. Commissioner, 152 T.C. at 249. In Clay, the Commissioner issued a notice of proposed adjustment including penalties along with a 30-day letter granting the opportunity to appeal that determination with the IRS Office of Appeals (Appeals). We held that the Commissioner made the initial determination for purposes of section 6751(b)(1) no later than when he issued the 30-day letter and that written supervisory approval was therefore required before the 30-day letter was sent to the taxpayer. Clay v. Commissioner, 152 T.C. at 249.

On April 25, 2019, we ordered the parties in these cases to address the effect of Clay on the pending motions for partial summary judgment. Tribune and CBH responded that under Clay written approval was required "before the first time the Service communicates the penalties to the taxpayers." Tribune and CBH argue that the NOPA, the January 2016 meeting, and the February 2016 call were communications of penalty determinations before which approval was required. The Commissioner argues that "formal communication offering the opportunity for administrative appeal with respect to the [penalties]" was not included with the NOPAs and that therefore, under Clay, the notice of deficiency and the FPAA

**[\*17]** were the first formal communications of the penalty determinations to which section 6751(b)(1) applied.

On the facts of these cases, we agree with the Commissioner. The first formal communications of the initial determinations of the penalties to which section 6751(b)(1) applied were the notice of deficiency (Tribune) and the FPAA (CBH). The Commissioner did not send Tribune or CBH any document that conferred the opportunity for an administrative appeal, which can be one of the important indicia of formality. Nor did the Commissioner send any other written communication purporting to determine a penalty with any sense of finality. As a result, the notice of deficiency and the FPAA were the Commissioner's first formal written communications to Tribune and CBH, respectively, informing them that the Commissioner had determined to assert penalties.

Tribune and CBH argue that supervisory approval is required by "the first time an IRS official introduces the penalty into the conversation". See Graev III, 149 T.C. at 501 (Lauber, J., concurring). They argue that section 6751(b)(1) and Clay require that written approval occur "before communicating the initial determination of a penalty to the taxpayer." Then, building on that phrase, they argue that the approval requirement "arises the moment when the employee first proposes the imposition of penalties to the taxpayer." Tribune and CBH argue that

**[*18]** approval of the various 20% penalties is required to have occurred before those were first mentioned in a January 2016 meeting during which Mr. Trevino described the adjustments that might be forthcoming.  They further argue that approval of the gross valuation misstatement penalty is required to have occurred before it was first suggested in the NOPA that was issued to Tribune on March 31, 2016.

Although the statute looks for approval of the "initial determination", Tribune and CBH look for approval of the "first propos[al]".  This approach ignores the sense of formality implied by Congress' use of the word "determination" and would render the examination of penalty issues unworkable.

> To make a determination is to establish something conclusively. When ascertaining the plain meaning of words, it is appropriate to consult dictionaries.  See Nat'l Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472, 480 n.10 (1979); Rome I, Ltd. v. Commissioner, 96 T.C. 697, 704 (1991).  Webster's Collegiate Dictionary 315 (10th ed. 1996) defines "determine" as "to fix conclusively or authoritatively".  The Random House College Dictionary 362 (rev. ed. 1980) defines it as "to settle or decide (a dispute, question, etc.) by an authoritative or conclusive decision".   These definitions are consistent; a determination is authoritative or conclusive.

Graev III, 149 T.C. at 533 (Buch, J., concurring as to Parts I and III and dissenting as to Part II).  A "'determination' is embodied in a written communication to the taxpayer that notifies him of a final IRS decision".  Belair Woods, LLC v.

**[*19]** <u>Commissioner</u>, 154 T.C. __, __ (slip op. at 15) (Jan. 6, 2020). Clearly "determination" is not a synonym for a mere suggestion, proposal, or initial informal mention of the possibility of the assertion of a penalty.

A background on basic IRS examination and appeal procedures is instructive. In an IRS examination, the examination personnel are charged with gathering information and determining a liability if appropriate. <u>See</u> secs. 7601-7613. In doing so, they may request information by various means including the issuance of Information Document Requests. Internal Revenue Manual pt. 4.46.4.2 (Dec. 13, 2018). If developing a penalty issue, the IRS may need to request information related to whether imposing a particular penalty is justified. This would necessarily involve communicating the possibility that a penalty is being considered long before the Commissioner actually determines whether to impose a penalty, let alone communicates that determination to the taxpayer. The mere possibility that a penalty might be asserted is not a determination.

In their response to our April 25, 2019, order, Tribune and CBH argue that a NOPA grants appeal rights. But they ignore the wording of the NOPA itself. The heading of the form notes that it is a "proposed adjustment", falling short of a "determination" requiring approval. Moreover, the form states:

[*20] Based on the information we now have available and our discussions with you, we believe the proposed adjustment listed below should be included in the revenue agent's report. However, if you have additional information that would alter or reverse this proposal, please furnish this information as soon as possible.

This text makes clear that a NOPA, standing alone, is not a determination.

As for appeal rights, a NOPA, standing alone, grants no such thing. Tribune and CBH cite the Appeals fast track settlement and early referral procedures as examples of when a NOPA grants the opportunity for an appeal. It is true that a taxpayer may request that any developed, unagreed issue under audit be referred to Appeals, even while the remaining issues remain under audit. Rev. Proc. 99-28, sec. 2.01, 1999-2 C.B. 109, 109. However, such a request to appeal an issue is not a right. The request may be denied, and there is no right to appeal such a denial. Id. sec. 2.09, 1999-2 C.B. at 110. We need not reach the question of whether approval would be required if fast track settlement or early referral were granted, because those facts are not before us. What is before us is a NOPA, standing alone. And a NOPA standing alone is not a determination.

B.    Approval in Writing

To satisfy the section 6751(b)(1) requirement of penalty approval in writing by the immediate supervisor, the writing must manifest the supervisor's intent to approve the penalty. Although the IRS has various forms that can be used for

**[\*21]** approving penalties,[2] courts have not restricted the Commissioner to using only those forms in order to comply with the written approval requirement. See Palmolive Bldg. Inv'rs v. Commissioner, 152 T.C. 75, 85-86 (2019).

Any written manifestation of the supervisor's intent to approve the penalty is sufficient. For example, in PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193, 213 (5th Cir. 2018), aff'g T.C. Dkt. No. 26096-14 (Oct. 7, 2016) (bench opinion), we had found that a signed 30-day letter sent by the supervisor of the examining agent satisfied the requirement for written approval.[3] But these cases are not as straightforward as PBBM-Rose Hill. The notice of deficiency and the FPAA in the cases before us were not signed by the immediate supervisor of the examining agent. These cases are also not as straightforward as the many cases in which we have accepted supervisory approval set forth in a Civil Penalty Approval

---

[2]Recent guidance from Office of Chief Counsel provides a nonexclusive list of approval forms: "Form 300 (Civil Penalty Approval Form (Lead Sheet)); Form 8278 (Assessment and Abatement of Miscellaneous Civil Penalties); Form 4700 (for W&I/SBSE campus cases); Form 5772 (for TEGE cases); Form 5809 (for preparer penalty cases)." CC-2018-006 (June 6, 2018).

[3]The Court of Appeals for the Fifth Circuit referred to "the cover letter of a summary report". PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193, 213 (5th Cir. 2018). Our bench opinion, see sec. 7459(b); Rule 152, made clear that the cover letter was a 30-day letter that transmitted the examination report, PBBM-Rose Hill, Ltd. v. Commissioner, T.C. Dkt. No. 26096-14 (Oct. 7, 2016) (bench opinion at 25).

[*22] Form.  See, e.g., Brumbaugh v. Commissioner, T.C. Memo. 2018-140, at *21.  We have no such form here.

Although these are not straightforward cases, we are not without approvals. The last step in the examinations of Tribune and CBH was to close the cases out to technical services for preparation of the notices.  To do that, Ms. Valdez signed Forms 3198 transmitting the case files and all of the adjustments for inclusion in the notices.  Those Forms 3198 manifest her intent to approve the adjustments included with those forms.  But the papers included with the summary judgment motions do not clearly indicate what was included with the Forms 3198.  As a result, there is a question of fact as to what Ms. Valdez approved.

Under our precedent in Graev III, however, we can conclude that the 40% gross valuation misstatement penalties were approved.  In Graev III we were also confronted with a penalty determination made by a revenue agent followed by an additional alternative penalty determination made by an attorney with the IRS Office of Chief Counsel.  We held that the attorney's recommendation was the initial determination of that penalty.  In Graev III, the taxpayers argued that the attorney served only in an advisory capacity and did not have authority to make an initial determination of penalties.  The Court was divided on this issue, with several Judges dissenting as to the issue of whether counsel has authority to make

[*23] penalty determinations such that approval of their determinations would be relevant. Graev III, 149 T.C. at 529-532 (Buch, J., concurring as to Parts I and III and dissenting as to Part II). In these cases the question of whether the initial determination of penalties can be made by an attorney, Mr. Trevino, could affect the outcome on the question of whether the Commissioner complied with section 6751(b)(1) as to the 40% gross valuation misstatement penalty. Both the facts of these cases and the parties' stipulations confirm that Mr. Trevino made the initial determinations of the 40% gross valuation misstatement penalties. Ms. Kahn was Mr. Trevino's immediate supervisor. Under the holding of Graev III, Ms. Khan satisfied section 6751(b)(1) when she approved in writing Mr. Trevino's initial determinations to assert the 40% gross valuation misstatement penalties by electronically signing the June 28, 2018, memoranda approving the proposed notice of deficiency for Tribune and the proposed FPAA for CBH. The notices included the 40% penalty and, alternatively, the various 20% penalties. Ms. Khan therefore also approved the various 20% penalties. However, her approval does not satisfy section 6751(b)(1) because she was not the immediate supervisor of Mr. Unger, the individual who made the initial determination to impose the various 20% penalties.

**[\*24]**                                    <u>Conclusion</u>

In these cases the initial determinations as to penalties were first communicated in the notice of deficiency issued to Tribune and the FPAA issued with respect to CBH.  We must decide in the context of these cross-motions for partial summary judgment whether the penalty determinations were approved in writing before the Commissioner issued those notices.  The Commissioner has shown that Ms. Kahn approved Mr. Trevino's initial determination of the 40% gross valuation misstatement penalties as to each of Tribune and CBH.  Accordingly, we will grant the Commissioner's motion in part, as to those penalties.  However, there is a question of fact as to whether Ms. Valdez approved Mr. Unger's initial determinations of the various 20% penalties before those penalties were communicated to Tribune and CBH in the notice of deficiency and the FPAA.  As a result, we will deny both parties' motions for partial summary judgment as to the various 20% penalties.

<u>An appropriate order will be issued</u>.