# United States Tax Court

T.C. Memo. 2022-120

LUIS A. CASTRO AND JUDI A. CHAVEZ-CASTRO,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 2386-17.                    Filed December 19, 2022.

————

*Daniel W. Layton*, for petitioners.

*Jeffrey L. Heinkel*, *Michael S. Hensley*, and *Richard J. Pietrofeso*, for respondent.

## MEMORANDUM OPINION

MARVEL, *Judge*: This case is before the Court for disposition pursuant to Rule 122.[1] After stipulations, the only issue remaining for decision is whether respondent has established compliance with the written supervisory approval requirement of section 6751(b)(1) when determining accuracy-related penalties under section 6662(a) against petitioners for the 2011–14 tax years (years at issue). In particular, we must decide whether a manager's signature on a Letter 950, a so-called 30-day letter, dated July 8, 2016, is sufficient to demonstrate written supervisory approval of the accuracy-related penalties asserted in an enclosed revenue agent's report (RAR), dated July 6, 2016, despite the manager's later approval of changes to those penalties and other additions to tax. More specifically, in a later executed Civil Penalty

———

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] Approval Form, dated October 18, 2016, the manager approved (1) rejecting additions to tax under sections 6651(a)(2) and 6654 asserted in the enclosed RAR and (2) revising the amounts of the accuracy-related penalties under section 6662(a) and additions to tax under section 6651(a)(1) asserted in the enclosed RAR. Petitioners contend that, under the circumstances presented here, this demonstrates that the manager did not approve the assertion of accuracy-related penalties under section 6662(a) until October 18, 2016, after the assertion of accuracy-related penalties had already been formally communicated to them. For the reasons discussed herein, we decide this issue in favor of respondent.

## *Background*

The parties submitted this case fully stipulated under Rule 122. The stipulated facts and facts drawn from the stipulated exhibits are incorporated herein by this reference. Petitioners resided in California when they petitioned the Court.

Respondent determined income tax deficiencies for the years at issue, as well as an addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662(a) for each year. Respondent's determination was based on an examination that began on October 23, 2015. Revenue Agent Steve Hwang (RA Hwang) conducted the examination, and his immediate supervisor "[a]t the time the Letter 950 . . . was signed [on July 8, 2016,] and through at least the date the IRS Civil Penalty Approval Form . . . was signed [on October 18, 2016,]" was Group Manager Melvin Relf (GM Relf).

At the close of his examination, RA Hwang prepared his RAR. The RAR included his calculations of petitioners' income tax deficiencies, as well as section 6662 penalties, for each of the years at issue. The RAR also included additions to tax under sections 6651(a)(1) and (2) and 6654 for some of the years at issue.[2] RA Hwang provided the RAR and a Letter 950 to GM Relf for review and signature on July 8, 2016.[3] That same day, GM Relf signed a Letter 950. A Letter 950 is

_____

[2] Specifically, the RAR asserted (1) additions to tax under section 6651(a)(1) for the 2012, 2013, and 2014 tax years, (2) additions to tax under section 6651(a)(2) for the 2013 and 2014 tax years, and (3) additions to tax under section 6654 for the 2012 and 2014 tax years.

[3] The case activity record states that RA Hwang provided the "30-day package" to GM Relf for his review and signature on July 8, 2016, but does not specify the

[*3] a form letter that informs a taxpayer that the revenue agent assigned to the case has prepared a report and identifies the taxpayer's options if he or she agrees or disagrees with the report. On July 8, 2016, the signed Letter 950 and the enclosed RAR were sent to petitioners. The signed Letter 950 stated that the examination report (i.e., the RAR prepared by RA Hwang) was enclosed, and the parties have stipulated that it was enclosed when the signed Letter 950 was sent to petitioners.

As noted in the case activity report, on August 30, 2016, GM Relf "reviewed the 30-day package and found some of the penalties . . . [were] not computed correctly." Because of these errors, GM Relf provided RA Hwang with computation worksheets to recalculate the additions to tax and penalties correctly, which RA Hwang completed the following day.

After a series of conversations among RA Hwang, GM Relf, and their Territory Manager on October 3 and 4, 2016, RA Hwang prepared a corrected Revenue Agent's Report (corrected RAR) at the direction of the Territory Manager. The corrected RAR was issued on October 5, 2016, and as discussed below it reflected changes to the penalties and additions to tax being sought. On October 17, 2016, RA Hwang prepared his final penalty lead sheet and closed the examination.

On October 18, 2016, GM Relf signed a Civil Penalty Approval Form with respect to the years at issue. In that form, under the "Assert Penalty" heading, an "X" was marked under the "Yes" column for an addition to tax under section 6651(a)(1) and an accuracy-related penalty for substantial understatement of income tax under section 6662(d) for each year at issue.[4] Conversely, under the "Assert Penalty" heading, an

---

included documents. While the term "30-day package" is not defined in the case activity record or elsewhere, the case activity record also states that the 30-day package was sent to petitioners and their authorized representative on July 8, 2016. The stipulated record confirms that the documents sent by the Examination Division to petitioners on July 8, 2016, were the signed Letter 950 and the enclosed RAR. We therefore find that the term "30-day package" in the case activity record includes the RAR and Letter 950 and that the RAR and Letter 950 were presented to GM Relf for his review and signature on July 8, 2016.

[4] While section 6662(d) defines "substantial understatement of income tax," section 6662(a) (in conjunction with section 6662(b)(2)) imposes the penalty for an underpayment attributable to a substantial understatement of income tax. We therefore refer throughout this Memorandum Opinion to the accuracy-related penalties determined against petitioners as having been imposed under section 6662(a) rather than under section 6662(d).

**[\*4]** "X" was marked under the "No" column for additions to tax under sections 6651(a)(2) and 6654 for the years at issue.

On October 26, 2016, respondent issued the notice of deficiency underlying this case. The penalties and additions to tax determined in the notice of deficiency corresponded to the penalties and amounts shown in the corrected RAR. Specifically, respondent determined only additions to tax under section 6651(a)(1) and accuracy-related penalties under section 6662(a) (not additions to tax under sections 6651(a)(2) and 6654) for each of the years at issue. The amount of each accuracy-related penalty under section 6662(a), and of each addition to tax under section 6651(a)(1) that had been asserted in the original RAR dated July 6, 2016, was also revised downward to reflect the amount shown in the corrected RAR dated October 5, 2016. Finally, respondent determined an addition to tax under section 6651(a)(1) for the 2011 taxable year, which had not been asserted in the original RAR.[5] Petitioners timely petitioned this Court on January 30, 2017. On July 15, 2019, the parties filed a Stipulation of Settled Issues that resolved all issues in dispute between them, except for whether petitioners are liable for accuracy-related penalties. On November 4, 2019, the parties submitted the case for decision fully stipulated, pursuant to Rule 122.

## *Discussion*

Pursuant to section 6662(a), the Commissioner may impose an accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if the underpayment is attributable, inter alia, to a "substantial understatement of income tax." § 6662(a), (b)(2), (d).

The Commissioner bears the burden of production as to a taxpayer's liability for any penalty. § 7491(c). As part of this burden, the Commissioner must produce evidence that he complied with

---

[5] In sum the corrected RAR and the notice of deficiency reflected three departures from the original RAR dated July 6, 2016, with regard to penalties and additions to tax: (1) the rejection of additions to tax under sections 6651(a)(2) and 6654 for all of the years for which they had been asserted in the original RAR dated July 6, 2016, *see supra* note 2 and accompanying text; (2) the assertion for the first time of an addition to tax under section 6651(a)(1) for 2011; and (3) the downward revision of the amounts of the accuracy-related penalties under section 6662 for the years at issue and the additions to tax under section 6651(a)(1) for 2012, 2013, and 2014 (i.e., respondent revised downward the amounts of the penalties and additions to tax that had been both asserted in the original RAR dated July 6, 2016, and neither rejected from, nor added for the first time to, the corrected RAR and the notice of deficiency).

**[\*5]** section 6751(b)(1), which requires that the initial determination of certain penalties be "personally approved (in writing) by the immediate supervisor of the individual making such determination." *See Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016).  The approval requirement in section 6751(b)(1) does not apply to "any addition to tax under section 6651, 6654, [or] 6655" or "any other penalty automatically calculated through electronic means."  § 6751(b)(2).

In our caselaw grappling with the meaning of the mandate in section 6751(b)(1), we have noted that "the 'initial determination' of a penalty assessment . . . is embodied in the document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties."[6] *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020).

---

[6] Respondent argues in his Simultaneous Supplemental Brief filed August 30, 2022, that in *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020), the U.S. Court of Appeals for the Ninth Circuit "held that section 6751(b)(1) requires written supervisory approval before the assessment of a penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *See Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1074.  Specifically, respondent argues that "section 6751(b) requires that supervisory approval be obtained no later than the date respondent issues the notice of deficiency (or files an answer or amended answer) asserting the penalty."  Respondent also argues that the Ninth Circuit's holding in *Laidlaw's Harley Davidson* binds us in this case because petitioners resided in California when they petitioned the Court. *See Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).  Under respondent's interpretation, the Civil Penalty Approval Form executed October 18, 2016, would provide the written supervisory approval required by section 6751(b) regardless of whether earlier approval existed.

We need not decide the issue here because we reach the same result applying our own caselaw.  We also note that whether it would be appropriate to apply the result in *Laidlaw's Harley Davidson* by reason of our holding in *Golsen* is questionable. *Golsen* states that "better judicial administration . . . requires us to follow a Court of Appeals decision which is *squarely in point* where appeal from our decision lies to that Court of Appeals and to that court alone." *Golsen*, 54 T.C. at 757 (emphasis added). *Laidlaw's Harley Davidson* concerned when section 6751(b) requires supervisory approval for assessable penalties under section 6707A and concluded that approval can be timely provided just before their assessment. *See Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1071.  However, it did not squarely address the application of penalties subject to the Code's deficiency regime. *See Lamprecht v. Commissioner*, T.C. Memo. 2022-91, at \*13 n.15 (characterizing the Ninth Circuit's holding as "rejecting this Court's formal communication standard for the section 6707A penalty for failure to report participation in a listed transaction, and indicating that

**[\*6]** Additionally, we have held that "if the taxpayer has challenged the Commissioner's penalty determinations, the Commissioner must come forward with evidence of penalty approval as part of his initial burden of production." *Frost v. Commissioner*, 154 T.C. 23, 34 (2020). "[O]nce the Commissioner makes that showing, the taxpayer must come forward with contrary evidence." *Id.* While the burden shifts to petitioners to provide "contrary evidence" to rebut the Commissioner's initial showing, this shift does not permit petitioners to engage in a roving cross-examination of the "depth or comprehensiveness of the supervisor's review." *Belair Woods*, 154 T.C. at 17 (citing *Raifman v. Commissioner*, T.C. Memo. 2018-101, at \*61). Rather, the relevant question is only whether petitioners can present evidence that counters the Commissioner's proffered evidence that a penalty was timely approved as required by section 6751(b)(1). Applying these standards, we have held that a manager's signature on a Letter 950 that enclosed an RAR, which asserted penalties, was sufficient to prove compliance with section 6751(b)(1) in the absence of contrary evidence. *See Patel v. Commissioner*, T.C. Memo. 2020-133, at \*10–11, \*25–26; *Flume v. Commissioner*, T.C. Memo. 2020-80, at \*34–35.

Respondent contends that GM Relf's signature on the Letter 950 that was mailed to petitioners with the July 6, 2016, RAR approved the contents of the RAR, including the asserted accuracy-related penalties. For support, respondent relies primarily upon our opinions in *Belair Woods* and *Clay v. Commissioner*, 152 T.C. 223 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021), as well as *Tribune Media Co. v. Commissioner*, T.C. Memo. 2020-2, *Donoghue v. Commissioner*, T.C. Memo. 2019-71, *aff'd*, No. 19-2265, 2021 WL 6129132 (1st Cir. June 2, 2021), and *Raifman*. Respondent argues that this Court does not require the Commissioner to use any specific form for penalty approval purposes. Accordingly, he points us to our prior opinion in *Tribune Media Co.*, where we stated that penalty approval could be found in "a signed 30-day letter sent by the supervisor of the examining agent". *Tribune Media Co.*, T.C. Memo. 2020-2, at \*21 (summarizing our holding in *PBBM-Rose Hill, Ltd. v. Commissioner*, T.C. Dkt. No. 26096-14 (Oct. 7, 2016) (bench opinion), *aff'd*, 900 F.3d 193 (5th Cir. 2018)). Respondent continues by noting that we have held that we will not inquire into the sufficiency of a manager's deliberations about whether to approve a penalty; rather, we confine our inquiry to a search for evidence of written approval. *See Raifman*, T.C. Memo. 2018-101, at \*61. Additionally,

---

the initial determination in a deficiency case is likely embodied in the [notice of deficiency]").

**[\*7]** respondent relies upon our holdings in *Clay* and *Donoghue*, where we held that a 30-day letter enclosing an RAR could constitute the initial determination for section 6751(b)(1) purposes, *see Clay*, 152 T.C. at 249–50, and that a Civil Penalty Approval Form signed on the same day as the 30-day letter was sufficient to meet his burden of production under section 6751(b)(1), *see Donoghue*, T.C. Memo. 2019-71, at \*42, \*45–46. Accordingly, respondent contends that GM Relf's signature on the Letter 950 is sufficient to meet his burden of production with respect to section 6751(b)(1).

Petitioners counter that, on the totality of the stipulated record, the signature found on the Letter 950 does not demonstrate written managerial approval of the contents of the enclosed RAR, including the asserted accuracy-related penalties. Specifically, petitioners note that the Letter 950 was mailed to them on July 8, 2016, with an enclosed RAR asserting penalties or additions to tax under four distinct Code provisions. The stipulated record, petitioners argue, proves that the first review of the penalties and additions to tax asserted in the RAR did not occur until August 30, 2016, and, once that occurred, GM Relf found errors with respect to the penalties and additions to tax. Accordingly, petitioners argue that when GM Relf signed the Civil Penalty Approval Form on October 18, 2016, he expressly disapproved of two additions to tax that were purportedly the subject of his approval when he signed the Letter 950 on July 8, 2016, and he approved revised amounts of the other penalties and additions to tax. This later and express disapproval, petitioners contend, is the type of contrary evidence that precludes a conclusion that GM Relf's signature on the Letter 950 approved the contents of the RAR. On the contrary, petitioners insist that the "most logical conclusion [to be drawn from the stipulated record] is that the group manager did not view the Letter 950 as an approving document and did not view the signing of the Letter 950 as an event which triggered his responsibility to review the penalties."

In addition, petitioners contend that the cases respondent cited do not create a per se rule that a signed Letter 950 always establishes compliance with section 6751(b)(1). Rather, petitioners argue that those cases do not preclude an ambiguous record from creating a "question of fact" with respect to the section 6751(b)(1) requirement, which must be resolved by weighing all of the relevant evidence.

In sum, petitioners argue that the signed Letter 950 did not constitute approval of the penalties asserted in the enclosed RAR and that approval of the penalties came only at a later date. However,

[*8] petitioners do not argue that there was another written communication asserting penalties before the signed Letter 950 and the enclosed RAR were sent to petitioners on July 8, 2016.

We conclude on the record before us that respondent has the better argument. Respondent has shown that a Letter 950 signed by RA Hwang's immediate supervisor, GM Relf, accompanied the RAR asserting accuracy-related penalties (and various additions to tax) that RA Hwang prepared and sent to petitioners. The Letter 950 specifically referenced the fact that an examination report was enclosed. In addition, the case activity record reflects that RA Hwang presented the Letter 950 and the RAR to GM Relf for review and signature before sending both documents to petitioners. This record is sufficient to establish written supervisory approval of the accuracy-related penalties. We do not review the record to determine the depth or comprehensiveness of GM Relf's review but only to determine that he gave written supervisory approval before penalties were formally asserted in a written communication to petitioners. *See Belair Woods*, 154 T.C. at 17; *Patel*, T.C. Memo. 2020-133, at *25–26 (rejecting argument that immediate supervisor's signature on a Letter 950 "was a nominal act that did not reflect meaningful review" even though "the letter itself does not mention the penalty or the approval"). While GM Relf could have executed a Civil Penalty Approval Form to document his approval, we do not require that written supervisory approval take any particular form or comply with respondent's own internal guidance. *See Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 85–86 (2019) ("On the issue of section 6751(b) compliance, the IRS's use of a form other than the one prescribed by internal administrative regulations does not preclude a finding that the supervisory approval requirement has been satisfied. . . . What must be 'in writing' to satisfy section 6751(b)(1) is the supervisor's approval. The statute does not require any particular writing by the individual making the penalty determination, nor any signature or written name of that individual."); *Lamprecht*, T.C. Memo. 2022-91, at *18; *see also TOT Prop. Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1359, 1372–74 (11th Cir. 2021), *aff'g* T.C. Dkt. No. 5600-17 (Dec. 13, 2019) (bench opinion); *Flume*, T.C. Memo. 2020-80, at *34–35.

Petitioners' arguments to the contrary are unavailing. Petitioners ask us to focus on whether alleged mistakes in the RAR that resulted in the rejection of certain additions to tax and revisions to the accuracy-related penalties and other additions to tax show that GM Relf "did not view the Letter 950 as an approving document." But this is a

**[\*9]** request to evaluate the depth of a supervisor's review, which we will not do. *See Belair Woods*, 154 T.C. at 17; *Raifman*, T.C. Memo. 2018-101, at \*61. Accordingly, we have declined to "look behind the documents" when a taxpayer argues that a "signature on Letter 950 is insufficient" because "the letter itself does not mention the penalty or the approval." *Patel*, T.C. Memo. 2020-133, at \*26. We decline to do so here as well.[7]

Petitioners are correct that our cases do not establish a per se rule that a signed Letter 950 conclusively establishes written supervisory approval. When respondent produces evidence of timely written supervisory approval of a penalty, the burden shifts to petitioners "to offer evidence suggesting that the approval of the . . . penalty was untimely." *See Frost*, 154 T.C. at 35. Here, however, there is no indication in the record "that there was a formal communication of the penalty before the proffered approval." *Id.* Additionally, the record establishes that the Letter 950 and the accompanying RAR asserting

---

[7] Even assuming arguendo that a later revision to the amounts of accuracy-related penalties can result in a lack of timely supervisory approval of those penalties, the circumstances in this case do not support that conclusion. First, regarding GM Relf's October 18, 2016, approval of rejecting additions to tax under sections 6651(a)(2) and 6654 and of revising the additions to tax asserted under section 6651(a)(1), those additions to tax did not require supervisory approval at the time they were asserted. *See* § 6751(b)(2). Because no supervisory approval of these additions to tax was ever required, their later rejection or revision has no bearing on his approval of the assertion of accuracy-related penalties on July 8, 2016.

In addition, regarding GM Relf's approval of downward revisions to the amount of accuracy-related penalties on October 18, 2016, there is no support in our caselaw for the proposition that a decrease or increase in the amount of a penalty that has already been approved cannot be effected at a later date, at least where timely supervisory approval is obtained for the decrease or increase. *See Oropeza v. Commissioner*, 155 T.C. 132, 140, 144 n.5 (2020) (stating that "[w]e have previously concluded that supervisory approval must be secured both for the basic penalty under sec. 6662(a) and (b) and for any rate enhancement," even though a penalty rate enhancement does not "impose a distinct penalty" and only "increases the rate of the penalty imposed"); *Palmolive Bldg. Invs.*, 152 T.C. at 81, 83–84, 89 (holding that written supervisory approval of a lesser 20% substantial valuation misstatement penalty imposed in the alternative under section 6662(a) and (b)(3) was timely obtained in July 2014 even though written supervisory approval of a greater 40% gross valuation misstatement penalty under section 6662(a) and (h) had already been obtained six years earlier). Here, GM Relf approved the downward revisions to the amounts of the accuracy-related penalties on the Civil Penalty Approval Form on October 18, 2016, before respondent issued a notice of deficiency reflecting those revised amounts on October 26, 2016. We need not address whether timely written supervisory approval is necessary to assert only a decrease in the amount of a previously approved penalty because such approval was obtained here.

**[\*10]** penalties were presented to GM Relf for his review and signature before they were sent to petitioners.  This circumstance is sufficient to infer approval from his signature on July 8, 2016.  *See Patel*, T.C. Memo. 2020-133, at \*10–11, \*25–26; *Flume*, T.C. Memo. 2020-80, at \*34–35.  The later downward revisions to the amounts of accuracy-related penalties that GM Relf approved, as well as the later rejections of and revisions to unrelated additions to tax that he approved, have no bearing on whether supervisory approval was given at the time the accuracy-related penalties were first asserted.  In sum, respondent has established that GM Relf timely approved the assertion of accuracy-related penalties in writing by signing a Letter 950 that was presented together with the RAR asserting the penalties for his review and signature, and later events do not negate that timely approval.

To reflect the foregoing,

*Decision will be entered under Rule 155.*