156 T.C. No. 5

UNITED STATES TAX COURT

BRIAN D. BELAND AND DENAE A. BELAND, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30241-15.　　　　　　　　Filed March 1, 2021.

R commenced an examination of a joint return filed by Ps. A revenue agent (RA) sent Ps a summons requiring their attendance at an in-person closing conference before the end of a soon-expiring limitations period on assessment. During the closing conference the RA provided Ps a completed, signed Form 4549, Income Tax Examination Changes, reflecting an I.R.C. sec. 6663(a) civil fraud penalty. Ps declined to consent to the assessment of the civil fraud penalty reflected in Form 4549 or sign Form 872, Consent to Extend the Time to Assess Tax, to extend the limitations period. Thereafter, the RA obtained written approval from her immediate supervisor for the civil fraud penalty and sent Ps a notice of deficiency determining the same.

Ps moved for partial summary judgment contending that the civil fraud penalty was not timely approved by the RA's supervisor as required by I.R.C. sec. 6751(b)(1).

**Served 03/01/21**

Held: R's Form 4549 coupled with the context surrounding its presentation to Ps embodied the first formal communication of the RA's "initial determination" to assess the civil fraud penalty, necessitating prior supervisory approval under I.R.C. sec. 6751(b)(1).

Held, further, Ps' motion for partial summary judgment will be granted.

Matthew D. Carlson, for petitioners.

Sharyn M. Ortega, for respondent.


OPINION


GREAVES, Judge:  This case is before the Court on petitioners' motion for partial summary judgment (motion).  Petitioners contend that the Internal Revenue Service (IRS or respondent) failed to secure timely written supervisory approval under section 6751(b)(1) of a section 6663(a) fraud penalty (fraud penalty) for petitioners' 2011 tax year.[1]  For the reasons set forth below, we conclude that respondent's agent did not secure timely approval, and we will grant the motion.

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are based on the parties' motion papers and the attached exhibits, unless otherwise stated, and are not disputed. Petitioners resided in California when they filed the petition.

Respondent commenced an examination of petitioners' 2011 Form 1040, U.S. Individual Income Tax Return, on or shortly after October 30, 2014. Revenue Agent Ivana Raymond (RA Raymond) met with petitioners' certified public accountant, Guy Black (CPA Black), in December 2014 and with CPA Black and petitioners in January 2015. Following the December meeting, RA Raymond and her immediate supervisor, IRS Group Manager Gabriel Pardo (GM Pardo), referred petitioners' case to an IRS fraud technical advisor (FTA).

Upon the request of the IRS Criminal Investigation Division and the FTA, GM Pardo and RA Raymond issued an administrative summons to petitioners on June 5, 2015, to appear before RA Raymond again on June 30, 2015.[2] Petitioners sent a letter to RA Raymond dated June 23, 2015, requesting a postponement of the summons interview because petitioner wife had just given birth to petitioners'

---

[2]The summons did not specify the purpose of the meeting but internal e-mail correspondence between respondent's counsel and GM Pardo shows that the summons was issued at least in part "to obtain information concerning petitioners' knowledge as to bank information and third party records."

second child. In response, respondent's counsel sent a letter to petitioners on July 27, 2015, to compel their appearance before RA Raymond on August 19, 2015 (August meeting). The letter stated that "[l]egal proceedings may be brought against you in the United States District Court for not complying with [the] summons" issued on June 5, 2015. Petitioners acquiesced and appeared with CPA Black before RA Raymond, GM Pardo, and IRS Group Manager John Yu at the August meeting.

The August meeting constituted petitioners' closing conference.[3] During the meeting, RA Raymond asked petitioner husband a series of prepared questions before presenting to petitioners Form 4549, Income Tax Examination Changes, commonly referred to as a revenue agent report (RAR),[4] as well as a copy of Publication 3498, The Examination Process. The RAR included a fraud penalty with a stated amount and contained RA Raymond's electronic signature. RA

---

[3]A closing conference is held during the "closing phase of the examination" process and is meant to provide a forum for the examining agent to present the examination findings, explain proposed adjustments, and solicit agreement. See Internal Revenue Manual (IRM) pt. 4.10.7.5.1(1) (Mar. 3, 2015).

[4]See IRM pt. 4.10.8.1.1 (Aug. 11, 2006) (describing an RAR as a legally binding document that serves as the basis for assessment and collection actions). The May 2008 revision of Form 4549 that RA Raymond presented to petitioners includes a place for taxpayers to sign and consent to the immediate assessment and collection of any tax and penalties shown in the form.

Raymond completed the RAR before the August meeting, stating in her internal notes that she intended to discuss the RAR during the meeting.

Petitioners declined to sign the RAR during the August meeting because they did not agree with the fraud penalty. Petitioners also declined to sign Form 872, Consent to Extend the Time to Assess Tax, which would have extended the limitations period on assessment for petitioners' 2011 tax year. With fewer than 240 days left on the limitations period at the time of the August meeting, RA Raymond informed petitioners that they would forgo their appeal rights, their 2011 examination case file would be closed, and respondent would issue a notice of deficiency.[5]

On August 21, 2015, RA Raymond sent the 2011 examination case file and Civil Penalty Approval Form containing the fraud penalty, as well as an alternative assertion of an accuracy-related penalty pursuant to section 6662(a)

---

[5]In general, a taxpayer may seek review of the IRS examination team's proposed deficiency assessment by the IRS Office of Appeals (Appeals), see IRM pt. 8.1.1.3 (Apr. 4, 2014), which is now referred to as the "Independent Office of Appeals", Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133 Stat. at 983 (2019). The IRS issues a so-called 30-day letter, which allows the taxpayer to request Appeals consideration, only if there are at least 240 days remaining on the period of limitations. IRM pt. 4.10.8.12.1(1) and (2) (Sept. 12, 2014). If fewer than 240 days remain, the case remains unagreed, and the taxpayer does not consent to extend the limitations period, the IRS closes the case for issuance of a notice of deficiency. Id. at (3).

(accuracy-related penalty), to GM Pardo for approval. GM Pardo signed the Civil Penalty Approval Form that same day. On September 1, 2015, respondent issued a notice of deficiency to petitioners for tax year 2011 that included the fraud penalty without modification from the RAR given to petitioners during the August meeting, as well as the alternative assertion of the accuracy-related penalty.

Petitioners petitioned this Court for redetermination of the deficiency and the penalties. Thereafter, petitioners filed the motion currently before us.[6]

## Discussion

### I.    Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant a motion for summary judgment, or partial summary judgment regarding an issue, when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). Furthermore, we construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is

---

[6]Petitioners do not challenge the accuracy-related penalty as part of their motion.

appropriate. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Petitioners filed a motion for partial summary judgment limited to the question of whether RA Raymond secured timely approval for the fraud penalty as required by section 6751(b)(1). We find that this question may be adjudicated summarily.

## II. Analysis

The Commissioner bears the burden of production with respect to an individual taxpayer's liability for a penalty, and he is required to present sufficient evidence showing that the penalty is appropriate. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). The Commissioner's burden of production includes establishing compliance with section 6751(b)(1). See Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination".

While there is no statutory or regulatory guidance on when an "initial determination" is made, we do have developing caselaw on this issue. In Clay v.

Commissioner, 152 T.C. 223, 249 (2019), we held that the Commissioner must show that written supervisory approval for any penalty was obtained before the first formal communication to the taxpayer of the initial determination to assess penalties. In Belair Woods, LLC v. Commissioner, 154 T.C. 1, 15 (2020), we further stated that the "initial determination" of a penalty assessment "is embodied in the document by which the [IRS] Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties." We more recently held in Oropeza v. Commissioner (Oropeza II), 155 T.C. ___, ___ (slip op. at 10) (Oct. 13, 2020) that, "[d]epending on how a particular examination is conducted, the taxpayer may receive this notification in a notice of deficiency, or he may receive the notification in a document that the IRS sent him at an earlier date." In this context, the term "initial determination" of a penalty assessment "denotes a communication with a high degree of concreteness and formality" and represents a "'consequential moment' of IRS action". Belair Woods, LLC v. Commissioner, 154 T.C. at 15 (quoting Chai v. Commissioner, 851 F.3d at 220-221).

Petitioners argue that the RAR presented at the August meeting embodied the first formal communication of RA Raymond's initial determination to assert the fraud penalty. If that is the case, we cannot sustain the fraud penalty because

RA Raymond's immediate supervisor, GM Pardo, had not given written approval of the fraud penalty before the meeting as required by section 6751(b)(1). Respondent contends that the notice of deficiency, which was issued after GM Pardo provided written approval of the fraud penalty, represented the first formal communication of the initial determination to assert the fraud penalty. Specifically, respondent claims that (1) RA Raymond's work remained incomplete and an unequivocal decision to assert the fraud penalty was not made until after the August meeting and (2) appeal rights must accompany an initial determination and only the notice of deficiency provided petitioners with a right to appeal or protest the fraud penalty.

A.    Initial Determination

Section 6751(b)(1) makes no mention of a specific document that establishes the existence of an initial determination; however, we have frequently relied on a completed RAR that accompanies official IRS correspondence to support such a finding. In Clay v. Commissioner, 152 T.C. at 249, we concluded that an initial determination for purposes of section 6751(b)(1) was made when the Commissioner issued an RAR which proposed adjustments including penalties and accompanied a so-called 30-day letter. In Oropeza II, 155 T.C. at ___ (slip op. at 4-6), an examining agent also issued a completed RAR, which included

penalties and accompanied a Letter 5153, in the days preceding the closing of the taxpayer's examination case file because of an expiring limitations period on assessment and the taxpayer's refusal to voluntarily extend the limitations period. We concluded that the first formal communication of the examining agent's initial determination to assess penalties was embodied in the RAR and the letter it accompanied. Id. at ___ (slip op. at 11-12) (citing Oropeza v. Commissioner, T.C. Memo. 2020-111, at *8); accord Carter v. Commissioner, T.C. Memo. 2020-21, at *30 (finding that Letters 5153 and attached RARs that included penalties embodied an initial determination to assess penalties).

Presenting petitioners with the RAR at the closing conference for an opportunity, if not expectation, to legally bind petitioners to that assessment sufficiently denoted a consequential moment in which RA Raymond had made the initial determination to impose the fraud penalty.[7] Cf. Thompson v. Commissioner, 155 T.C. ___, ___ (slip op. at 10) (Aug. 31, 2020) (finding that a preliminary proposal of "applicable penalties" in an offer letter during a nonfinal

[7]The IRS released as interim guidance in May 2020 a new provision to the IRM requiring supervisory approval under sec. 6751(b)(1) "prior to issuing any written communication of penalties to a taxpayer that offers the taxpayer an opportunity to sign an agreement or consent to assessment or proposal of the penalty." IRS Memo. SBSE-20-0520-0029 (May 20, 2020). The May 2020 interim guidance was not official policy at the time of the August meeting in 2015 but is consistent with the conclusions drawn in this Opinion.

phase of the examination process did not support a finding of an initial determination); Kestin v. Commissioner, 153 T.C. 14, 29-30 (2019) (finding that an IRS letter giving a "stern" and "contingent * * * warning" of a possible penalty did not constitute an initial determination). The RAR provided to petitioners included the title "Income Tax Examination Changes" without additional text indicating to petitioners that the form was meant to serve as a discussion tool for purposes of the meeting or that the fraud penalty within it was preliminary. See Internal Revenue Manual pt. 4.10.8.4.2 (Aug. 11, 2006) (requiring that any RAR meant to be used for informational purposes only, i.e., not for the proposal of a tax liability, is to be labeled "FOR INFORMATION ONLY"); cf. Tribune Media Co. v. Commissioner, T.C. Memo. 2020-2, at *19 (finding that Form 5701, Notice of Proposed Adjustment, that included penalties with disclaimer text "proposed adjustment" fell short of an initial determination). It also contained RA Raymond's signature,[8] a specific fraud penalty of a determinate amount, and a signature box for petitioners to consent to the assessment of that penalty. When petitioners refused to sign the RAR or consent to extend the limitations period, RA Raymond informed them that the next step would be to close petitioners' 2011

---

[8]We recognize RA Raymond's typed name in the box entitled "employee signature" as her electronic signature. See, e.g., Chadwick v. Commissioner, 154 T.C. 84, 94 (2020).

examination case file to issue a notice of deficiency for the unagreed items in the RAR, thereby confirming that the fraud penalty contained in the RAR was in no way tentative and that no further substantive examination work remained.[9] Cf. Belair Woods, LLC v. Commissioner, 154 T.C. at 9, 11 (holding that a 60-day letter alerting taxpayers to possible penalties and inviting them to a conference to discuss the same fell short of an initial determination).

While the revenue agents in Clay, Belair Woods, and Oropeza II sent the taxpayers the RARs through the mail, we have never held that an initial penalty determination must be communicated by letter. Rather, the Court's focus is on the document and the events surrounding its delivery that formally communicate to the taxpayer the IRS' decision to definitively assert penalties. See, e.g., Oropeza II, 155 T.C. at ___ (slip op. at 17); Belair Woods, LLC v. Commissioner, 154 T.C. at 15; Kroner v. Commissioner, T.C. Memo. 2020-73, at *30. We therefore see no reason to limit the means of communication of the initial determination to the mail; instead, this communication may occur in person during a formal IRS meeting held at the final stage of the examination process. Cf. Belair Woods, LLC

_____

[9]Although a portion of the August meeting contained a fact-gathering element (RA Raymond interviewed petitioner husband before she presented the RAR to petitioners), any investigative aspect of this meeting as it pertained to the fraud penalty ended once RA Raymond gave the completed, signed RAR to petitioners under the conditions described above.

v. Commissioner, 154 T.C. at 13-14 (citing Bedrosian v. Commissioner, 143 T.C. 83, 107 (2014), aff'd, 940 F.3d 467 (9th Cir. 2019)); Bedrosian v. Commissioner, 143 T.C. at 107 (noting the practical difficulties in ascertaining when the IRS should be deemed to have made a "determination" as to the application of TEFRA procedures during the "give-and-take" stage of an IRS examination); Tribune Media Co. v. Commissioner, at *16-*18 (holding that suggestion of penalties during informal discussion without an accompanying formal document was insufficient as a communication of an initial determination).

Furthermore, the RAR was given to petitioners during a closing conference (rather than via a letter) because the limitations period for petitioners' 2011 tax year was soon to expire and they refused to extend it. With fewer than 240 days remaining on the limitations period at the time of the closing conference, it was inappropriate for respondent to issue a 30-day letter. See Carter v. Commissioner, at *30; supra note 5. In addition, due to the use of a summons letter requiring petitioners' attendance along with the parties involved, the August meeting carried a degree of formality not present in most IRS meetings. Under these circumstances, the closing conference at the end of petitioners' examination process was, like an IRS letter, a formal means of communicating respondent's initial determination that petitioners should be subject to the fraud penalty.

Respondent claims that RA Raymond did not intend for the RAR to constitute the initial determination, pointing out that RA Raymond mentioned in her workpapers that she completed the RAR for discussion purposes. Our decision is not affected by RA Raymond's subjective intentions; rather, we look at what the IRS actually communicates to the taxpayer. E.g., Oropeza II, 155 T.C. at ___ (slip op. at 17); Kroner v. Commissioner, at *30. For the reasons stated above, we find that RA Raymond communicated her initial determination to assert the fraud penalty when she provided petitioners with a completed and signed RAR at the closing conference.

B. Appeal Rights

Respondent alleges that because appeal rights were not available to petitioners when RA Raymond presented the RAR during the August meeting, an initial determination could not have been made. We disagree.

Respondent's argument is premised on the assumption that appeal rights form a necessary component of any initial determination. While the granting of appeal rights may be an indication of an initial determination, appeal rights form no basis of the plain text of section 6751(b)(1) and are not the sine qua non of an initial determination. See Carter v. Commissioner, at *29 ("[W]e gave no indication [in Belair Woods] that a communication cannot embody an initial

determination unless it provides appeal rights."); see also Patel v. Commissioner, T.C. Memo. 2020-133, at *18; Kroner v. Commissioner, at *29 n.16 ("[T]he right to appeal is not always necessary for a communication to meet the Belair Woods standard.").

The RAR provided to petitioners included a copy of Publication 3498, which stated that if petitioners disagreed with the fraud penalty, then RA Raymond would explain their appeal rights. Although RA Raymond informed petitioners during the August meeting that they did not have appeal rights at that time, we find this characterization incomplete and potentially misleading depending on when that statement was conveyed to petitioners during the meeting.

Petitioners had three options at the time of the August meeting: (1) agree to the fraud penalty in the RAR, which included a waiver of any appeal rights;[10] (2) execute Form 872 if they wished to have Appeals review the case; or (3) decline the first two options and receive a notice of deficiency. See Oropeza II, 155 T.C. at ___ (slip op. at 11). Whichever option petitioners selected,

---

[10]See Aguirre v. Commissioner, 117 T.C. 324, 327 (2001) ("By signing the Form 4549, * * * [the taxpayers] explicitly waived the right to contest in the Tax Court their tax liability for the years included in the Form 4549."); see also Uribe v. Commissioner, T.C. Memo. 2014-116, at *5 (holding that a taxpayer who has waived the right to challenge the IRS' proposed assessments by signing an RAR is "deemed to have had the opportunity to dispute the underlying liability").

petitioners had no reason to expect RA Raymond to change the penalty she proposed on the RAR, and her "typical responsibilities from that point forward would be ministerial in nature." Id.

## Conclusion

We conclude that the completed RAR given to petitioners during the August meeting, coupled with the context surrounding its presentation, represented a "consequential moment" in which RA Raymond formally communicated her initial determination within the meaning of section 6751(b)(1) that petitioners should be subject to the fraud penalty. RA Raymond failed to obtain the requisite supervisory approval before presenting the RAR to petitioners. Therefore, we find that respondent did not meet his burden of production under section 7491(c).

To reflect the foregoing,

An appropriate order will be issued.