T.C. Memo. 2021-125

UNITED STATES TAX COURT

EXCELSIOR AGGREGATES, LLC, BIG ESCAMBIA VENTURES, LLC, TAX
MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20608-18.                      Filed November 4, 2021.

<u>Michael Todd Welty</u>, <u>Lyle B. Press</u>, <u>Andrew W. Steigleder</u>, and <u>Kevin M. Johnson</u>, for petitioner.

<u>Christopher A. Pavilonis</u>, <u>Stephen A. Haller</u>, <u>Sean P. Deneault</u>, <u>Edward A. Waters</u>, <u>Russell Scott Shieldes</u>, <u>Denise A. Diloreto</u>, and <u>Thomas F. Harriman</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This case involves a charitable contribution deduction claimed by Excelsior Aggregates, LLC (Excelsior), for a conservation easement.

**Served 11/04/21**

[*2] The Internal Revenue Service (IRS or respondent) issued petitioner a notice of final partnership administrative adjustment (FPAA) disallowing Excelsior's deduction and determining penalties against it under section 6662A and section 6662(a), (b)(1), (2), and (3), (d), (e), and (h).[1]  Currently before the Court are the parties' cross-motions for partial summary judgment addressing the question whether the IRS complied with section 6751(b)(1) with respect to these penalties.

Section 6751(b)(1) requires that the "initial determination" of a penalty assessment be personally approved (in writing) by the immediate supervisor of the person making that determination.  Respondent contends that the "initial determination" of the penalties in question was communicated in the FPAA, which was issued on July 27, 2018.  Because supervisory approval for the penalties was secured before that date, respondent urges that approval was timely.

Petitioner contends that supervisory approval came too late because the "initial determination" of the penalties against Excelsior occurred nine months earlier, when the IRS mentioned the possibility of penalties during a telephone call with Excelsior's representative.  Petitioner advances an alternative argument with re-

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] spect to the section 6662(e) and (h) penalties in particular, contending that the "initial determination" of those penalties occurred four months before the FPAA was issued, when the IRS assessed penalties against Excelsior's appraiser under section 6695A(a). Concluding that respondent has the better argument on both points, we will grant his motion for partial summary judgment and deny petitioner's.

Background

The following facts are derived from the joint stipulation of facts, the parties' motion papers, and the exhibits and declarations attached thereto. They are stated solely for purposes of deciding the cross-motions and not as findings of fact in this case. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Excelsior had its principal place of business in Georgia when the petition was timely filed.

Excelsior was formed as a Georgia limited liability company in June 2014. For its short tax year beginning December 8, 2014, and ending December 31, 2014, it was treated as a partnership for Federal income tax purposes. Excelsior is sub-

[*4] ject to the TEFRA unified audit and litigation procedures,[2] and petitioner Big Escambia Ventures, LLC, is its tax matters partner (TMP). The TMP has filed petitions in 11 other cases involving conservation easements.

In September 2014 Excelsior acquired, by capital contribution, 301 acres of land in Escambia County, Alabama. On December 8, 2014, Excelsior Partners, LLC, an entity owned by a group of investors, purchased a 95% interest in Excelsior for $3.1 million. One week later, Excelsior granted to the National Wild Turkey Federation Research Foundation a conservation easement over the land.

Excelsior timely filed Form 1065, U.S. Return of Partnership Income, for its short 2014 tax year. On that return it claimed a charitable contribution deduction of $12,525,000 for the donation of the easement. Excelsior included with its return a copy of an appraisal prepared by Clayton M. Weibel.

The IRS selected Excelsior's return for examination and assigned the case to Revenue Agent (RA) Pamela Stafford. After gathering relevant facts RA Stafford contacted petitioner's counsel to schedule a telephone conference to discuss the

---

[2]Before its repeal, TEFRA (the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, secs. 401-407, 96 Stat. at 648-671) governed the tax treatment and audit procedures for many partnerships.

[*5] status of the examination.  The telephone conference occurred on October 24, 2017.

Before the call RA Stafford faxed petitioner's counsel a letter captioned "agenda."  The agenda began with a "[d]isclaimer" that the "discussion is based on current findings" and that "the results * * * could change before the examination officially concludes."  The agenda proposed several topics for discussion, including valuation of the easement, whether the easement had "a valid conservation purpose," and whether any penalties would be applicable.  The letter provided a brief summary of RA Stafford's tentative position with respect to each topic.

At the end of the telephone conference RA Stafford offered petitioner's counsel the opportunity to respond in writing.  He did so on December 1, 2017.  Following the telephone conference RA Stafford continued with her examination, issuing third-party summonses to obtain necessary information.

Concurrently with the examination of Excelsior, the IRS conducted an examination of appraisals prepared by Mr. Weibel, including the appraisal he performed for Excelsior.  A team of IRS appraisers completed their work in January 2018.  They concluded that "Mr. Weibel made a gross overvaluation misstatement as defined in [section] 6662(h) and that [a section] 6695A penalty should be asserted against Mr. Weibel."

**[*6]** RA Stafford agreed with their recommendation and, on January 26, 2018, issued Mr. Weibel a Form 5701, Notice of Proposed Adjustment. This notice stated that a "[s]ection 6695A penalty [of $12,500] is being imposed on Clayton M. Weibel for the overvaluation of the appraisal for Excelsior." The IRS appraisers concluded that Mr. Weibel had also overvalued 11 other easements in cases involving the same TMP, and RA Stafford prepared a report stating that Mr. Weibel had made "gross valuation misstatements per IRC 6662(h) on each of the appraisals." On January 31, 2018, RA Stafford informed Mr. Weibel that the IRS was asserting the section 6695A penalty "for all 12 of these appraisals * * * for a total of $150,000." On March 5, 2018, the IRS issued Mr. Weibel a notice of penalty charge and assessed these penalties against him.

RA Stafford then proceeded to complete her examination of Excelsior's return. On June 11, 2018, she made the decision to assert penalties against Excelsior for gross valuation misstatement under section 6662(h) and (in the alternative) substantial valuation misstatement under section 6662(e). She also decided to assert penalties under section 6662(b)(1) and (2), as well as under section 6662A. Her recommendations to this effect were set forth in a "Penalties Lead Sheet," which she digitally signed on July 24, 2018, and which her immediate supervisor, Catherine Brooks, digitally signed on July 25, 2018.

**[\*7]**  RA Stafford concurrently prepared a supplemental civil penalty approval form listing the same penalties.  That form states that RA Stafford "made the initial determination to assert * * * [these] penalties."  RA Stafford digitally signed that form on July 24, 2018, and Ms. Brooks digitally signed it the following day.  Two days later, on July 27, 2018, the IRS issued the FPAA disallowing Excelsior's charitable contribution deduction and determining penalties.

Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001).  We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp., 98 T.C. at 520.  The sole question presented at this juncture is whether the IRS complied with the requirements of section 6751(b)(1).  The parties have filed cross-motions for partial summary judgment on this question, and we find that it may be adjudicated summarily.

[*8] B.     Analysis

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In Belair Woods, LLC v. Commissioner, 154 T.C. 1, 14-15 (2020), we explained that the "initial determination" of a penalty assessment is typically embodied in a letter "by which the IRS formally notifie[s] * * * [the taxpayer] that the Examination Division ha[s] completed its work and * * * ha[s] made a definite decision to assert penalties." In a TEFRA case such as this, supervisory approval generally must be obtained before the FPAA is issued to the partnership. See Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. 75, 83 (2019). If supervisory approval was obtained by that date, the partnership must establish that the approval was untimely, i.e., "that there was a formal communication of the penalty before the proffered approval" was secured. Frost v. Commissioner, 154 T.C. 23, 35 (2020).

Respondent has supplied the supplemental civil penalty approval form by which RA Stafford recommended assertion of penalties against Excelsior. RA Stafford's supervisor, Ms. Brooks, signed the form as the "Examiner's Immediate Supervisor." The signature line reflects a computer-generated date of July 25,

[*9] 2018.  The definite decision to assert penalties was communicated to Excelsior two days later, in the FPAA dated July 27, 2018, with an attached Form 886-A explaining the determination.  The record thus shows that RA Stafford secured timely approval of these penalties.  See Frost, 154 T.C. at 35; Belair Woods, 154 T.C. at 15.

Petitioner contends that the IRS communicated to Excelsior its decision to assert penalties nine months earlier, i.e., on October 24, 2017, when RA Stafford conducted a telephone conference with petitioner's representative.  In preparation for that conference RA Stafford faxed petitioner's counsel an agenda that proposed several topics for discussion, including valuation of the easement, whether the easement had "a valid conservation purpose," and whether any penalties should apply.  The letter provided a summary of RA Stafford's tentative position on each topic.

The first line of the agenda included a "[d]isclaimer" that read as follows: "The 12/31/2014 [examination] is substantially completed.  This discussion is based on current findings.  It is possible that the results * * * could change before the examination officially concludes."  The second page of the agenda indicated that the parties' discussion would include the "reportable transaction understate-

[*10] ment penalty," the "valuation misstatement" penalty, and the "substantial understatement of tax" penalty.

At the end of the telephone conference RA Stafford offered petitioner's counsel the opportunity to respond to each topic in writing and to assert any defenses to the penalties that Excelsior believed applicable. Petitioner's counsel submitted his response on December 1, 2017. He disputed (among other things) the IRS' valuation method, urging the IRS to "use outside appraisals for audits of conservation easements." He explained that "no penalty will be mathematically warranted" if the easements were valued correctly.

Petitioner contends that the agenda that RA Stafford faxed to petitioner's counsel manifested her "initial determination" to assert penalties. We disagree. The word "determination" has "an established meaning in the tax context and denotes a communication with a high degree of concreteness and formality." Belair Woods, 154 T.C. at 15. An "initial determination" thus signifies a "consequential moment" of IRS action. Ibid. (quoting Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42). The "initial determination" of a penalty is typically embodied in a document by which the examining agent makes clear to the taxpayer that the IRS "has completed its work and made an unequivocal decision to assert penalties." Ibid.

[*11] The agenda that RA Stafford sent to petitioner's counsel did not inform him that the IRS "had completed its work." See ibid. To the contrary, the letter began with a "disclaimer" that the "discussion is based on current findings" and that "the results * * * could change before the examination officially concludes." Petitioner's counsel understood that the results could change, as evidenced by his submission of a written response five weeks later. In that document he urged RA Stafford to reconsider her tentative conclusions regarding the issues presented, including the applicability of penalties. Indeed, the results in fact did change (albeit to Excelsior's detriment) when RA Stafford ultimately decided to assert the negligence penalty as well as the other penalties the parties had discussed.

Neither the agenda nor the telephone conference informed petitioner of any "unequivocal decision" by the IRS. See ibid. RA Stafford proposed an agenda so that petitioner's counsel could prepare for the telephone conference. Because the audit results could change (and did change) during the nine months that were needed to complete the audit, RA Stafford had not made, as of October 24, 2017, any definite decision to assert penalties. See Thompson v. Commissioner, 155 T.C. 87, 92-93 (2020) (holding that a preliminary proposal of penalties in an offer letter was not an "initial determination" because the examination was not yet complete); Belair Woods, 154 T.C. at 12 (holding that a preliminary proposal of

[*12] penalties in a summary report was not an "initial determination"); <u>Tribune Media Co. v. Commissioner</u>, T.C. Memo. 2020-2, 119 T.C.M. (CCH) 1006, 1010 (holding that a proposal of penalties in a Form 5701 was not an "initial determination" where the form stated that "additional information * * * [could] alter or reverse" the proposal).

Petitioner errs in relying on <u>Beland v. Commissioner</u>, 156 T.C. 80 (2021). That case involved a closing conference between the taxpayers and an IRS team of examiners. The IRS team presented the taxpayers with a revenue agent report (RAR) that included the examining agent's signature, a fraud penalty of a determinate amount, and a signature box where the taxpayers could consent to the fraud penalty by affixing their signatures. <u>Id.</u> at 86-87. During the meeting the examining agent informed the taxpayers that, if they did not sign the RAR, then she would issue a notice of deficiency. <u>Id.</u> at 87.

We held that the RAR in these circumstances denoted the examining agent's "initial determination" to assert the fraud penalty because the agent had nothing left to do except "close * * * [the] examination case file to issue a notice of deficiency." <u>Id.</u> at 86-87. Whatever the taxpayers did, the penalty result would be the same. Either they would affix their signatures to the RAR (in which case the fraud penalty would be finally determined), or they would decline to sign the RAR (in

**[\*13]** which case they would receive a notice of deficiency in which the fraud penalty was finally determined).

This case differs from Beland in at least three respects. First, RA Stafford's letter proposed an agenda for discussion headed by a disclaimer that "[t]his discussion is based on current findings" and that "the results * * * could change before the examination officially concludes." Cf. id. at 87 (noting that IRS documents with "disclaimer text * * * [fall] short of an initial determination"). Second, the letter did not inform petitioner that the audit was over or that the IRS was closing the examination file. Rather, RA Stafford encouraged petitioner's counsel to present his side of the story during the telephone conference, and he was invited to submit (and did submit) a written response subsequently. See Kestin v. Commissioner, 153 T.C. 14, 29 (2019) (noting that an IRS document inviting a taxpayer to provide further input falls short of an "initial determination"). Finally, RA Stafford's letter did not set forth specific penalties "of a determinate amount." See Beland, 156 T.C. at 87. Rather, the letter listed several penalties without identifying amounts or percentages, e.g., as to whether a 20% or a 40% valuation misstatement penalty (or both) would be asserted.

Petitioner advances an alternative timeliness argument with respect to the section 6662(e) and (h) penalties for valuation misstatement. Petitioner asserts that

[*14] the "initial determination" to assert these two penalties was embodied "in the Notice of Penalty Charge dated March 5, 2018, issued to [Mr.] Weibel." According to petitioner, "the decision to assess penalties under * * * section 6695A against an appraiser reflects an initial determination to propose valuation misstatement penalties against the taxpayer who used the appraisal."

We disagree. It is well established that each penalty stands on its own for purposes of section 6751(b)(1). In Palmolive Building Investors, LLC, 152 T.C. at 84, the IRS asserted penalties on three different dates. It first asserted a gross valuation misstatement penalty; it then asserted a negligence penalty; and it finally asserted penalties for substantial understatement and substantial valuation misstatement. Ibid. The examining agent obtained timely supervisory approval for each penalty before that particular penalty was communicated to the taxpayer. Ibid. The taxpayer contended that the agent was required to obtain approval for all four penalties at the time the IRS asserted the first penalty. Id. at 84-85. We demurred, holding that the statute "includes no requirement that all potential penalties be initially determined * * * at the same time." Id. at 85. Similarly, we have rejected the argument that the initial determination of penalty A constitutes a de facto determination of penalty B, on the theory that B is a "lesser included offense" of A. See

[*15] Oropeza v. Commissioner, 155 T.C. 132, 144 n.5 (2020) (citing Palmolive Bldg. Inv'rs, 152 T.C. at 83-84).

Section 6751(b)(1) "requires approval for the initial determination of a penalty assessment, not for a tentative proposal or hypothesis." Belair Woods, 154 T.C. at 9. The notice of penalty charge issued to Mr. Weibel did not reflect the "initial determination" to impose section 6662(e) and (h) penalties upon Excelsior. Rather, it reflected the decision to impose section 6695A penalties upon Mr. Weibel.

Subsections (e) and (h) of section 6662 share a common element with section 6695A(a)(2): All require that a substantial or gross valuation misstatement occurred. But the imposition of the latter penalty against an appraiser does not automatically trigger a penalty against the taxpayer who relied on the appraisal. Indeed, even after penalizing an appraiser the IRS might determine that the taxpayer, "in addition to obtaining such appraisal, * * * made a good faith investigation of the value of the contributed property." See sec. 6664(c)(3)(B).

After recommending penalties against Mr. Weibel, RA Stafford appears to have taken additional steps in her examination of Excelsior. On January 26, 2018, she issued Mr. Weibel a Form 5701, notifying him that the IRS was asserting a section 6695A penalty against him. But she did not make the initial determination

**[\*16]** to assert penalties against Excelsior until June 11, 2018, after gathering all relevant facts, completing her examination, and considering any defenses that Excelsior might have available to it.  See Belair Woods, 154 T.C. at 12.

In any event, in ascertaining the timeliness of penalty approval, we have uniformly asked whether the examining agent obtained supervisory approval "before the first formal communication to the taxpayer of penalties."  Frost, 154 T.C. at 32 (emphasis added); see Belair Woods, 154 T.C. at 10.  The timeliness inquiry thus turns on the timing of the IRS communication to the taxpayer against whom the penalties are being asserted.  We assume that Excelsior was in regular contact with Mr. Weibel; if he mentioned to Excelsior the Form 5701 he received in January 2018, Excelsior would likely have taken that as a worrisome sign.  But it is undisputed that "the first formal communication to the taxpayer of penalties," Frost, 154 T.C. at 32, did not occur until two days after RA Stafford's supervisor approved her recommendation to assert penalties against Excelsior.  Her approval was thus timely.

**[\*17]** To reflect the foregoing,

<u>An order will be issued denying petitioner's motion for partial summary judgment and granting respondent's cross-motion.</u>