# United States Tax Court

165 T.C. No. 8

COMPUTER SCIENCES CORPORATION,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 4823-21.                              Filed October 6, 2025.

————

P is a U.S. corporation engaged in the information technology business. During 2012 and 2013 P implemented a series of restructuring steps that allegedly generated a capital loss of $651,200,000. P reported that loss on its 2013 Federal income tax return.

R commenced an examination of P's return. R's agent recommended disallowance of the capital loss deduction and assertion of a 20% penalty for an underpayment due to a substantial understatement of income tax. *See* I.R.C. § 6662(a), (b)(2), (d)(1)(B). The agent's immediate supervisor approved the initial determination to assert this penalty. R subsequently issued P a 30-day letter and a Notice of Deficiency disallowing the capital loss deduction and determining a 20% penalty with respect to that adjustment.

P timely petitioned this Court. The parties have filed Cross-Motions for Partial Summary Judgment seeking a ruling as to whether R complied with the requirements of I.R.C. § 6751(b)(1) by securing timely supervisory approval of the penalty. P contends that R did not engage in "reasoned decision making" under the Administrative Procedure Act (APA) because the agent's supervisor failed to consider whether P had a "reasonable basis" defense

**Served 10/06/25**

available to it, based on adequate disclosure of the relevant facts. *See* I.R.C. § 6662(d)(2)(B)(ii). P accordingly urges that the supervisor's approval of the penalty should be set aside as agency action that is "arbitrary, capricious, [or] an abuse of discretion" under 5 U.S.C. § 706(2)(A).

*Held*: R satisfied the requirements of I.R.C. § 6751(b)(1) because R's agent secured written supervisory approval of the initial determination to assert the penalty before the 30-day letter and the Notice of Deficiency were issued to P.

*Held, further*, the APA provisions P cites do not apply to determinations made by this Court in the exercise of its deficiency jurisdiction under I.R.C. §§ 6213 and 6214(a), including determinations regarding R's compliance with I.R.C. § 6751(b)(1).

*Held, further*, if the APA provisions P cites were deemed relevant here, a supervisor's approval of a penalty recommendation does not constitute "final agency action" subject to judicial review under 5 U.S.C. § 704.

*Held, further*, if the supervisor's approval of a penalty were thought to constitute "final agency action," that action would not be subject to distinct judicial review under the APA because our review of R's compliance with I.R.C. § 6751(b)(1) in this deficiency case affords P an "adequate remedy in a court" within the meaning of 5 U.S.C. § 704.

*Held, further*, assuming arguendo that the APA requirement of "reasoned decision making" applies to a supervisor's approval of a penalty under I.R.C. § 6751(b)(1), review of that question would be on the administrative record, and the examination case file shows that the agent's supervisor engaged in "reasoned decision making."

————

*Vivek A. Patel, Allen Duane Webber, Courtland L. Roberts, Eric M. Aberg, Joseph B. Judkins, Meerah Kim, Varuni Balasubramaniam, Joseph B. Ward*, and *Nicholas M. O'Brien*, for petitioner.

*Emily J. Giometti, Kaitlyn N. Griffith, Archana Ravindranath, M. Jeanne Peterson, Robert T. Bennett, Charles E. Buxbaum, Travis Vance, Angela B. Reynolds*, and *Christine S. Irwin*, for respondent.

OPINION

LAUBER, *Judge*: Computer Sciences Corp. (CSC or petitioner) timely filed a Federal income tax return for its fiscal year ending March 29, 2013 (FY2013). Upon examination of that return the Internal Revenue Service (IRS or respondent) determined a deficiency of $276,535,161 and an accuracy-related penalty of $45,584,000 for an underpayment due to a substantial understatement of income tax. The adjustment giving rise to the bulk of this deficiency was the disallowance of a $651,200,000 capital loss.

Currently before the Court are the parties' Cross-Motions for Partial Summary Judgment addressing the question whether the IRS complied with section 6751(b)(1)[1] by securing timely supervisory approval of the penalty. Petitioner concedes that the examining agent's immediate supervisor timely signified his approval to assert the penalty by placing his signature on four distinct documents over a period of two months. But CSC insists that the supervisor did not engage in "reasoned decision making" under the Administrative Procedure Act (APA) because he failed to consider that petitioner might have a "reasonable basis" defense to the penalty, predicated on adequate disclosure. *See* § 6662(d)(2)(B)(ii). Petitioner urges that the supervisor's approval of the penalty should therefore be set aside as agency action that is "arbitrary, capricious, [or] an abuse of discretion" under 5 U.S.C. § 706(2). Concluding that respondent has the better side of this argument, we will grant his Motion for Partial Summary Judgment and deny petitioner's.

*Background*

The following facts are derived from the Pleadings, the parties' Motion papers, and the Declarations and Exhibits attached thereto. They are stated solely for the purpose of deciding the Cross-Motions and

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

At all relevant times CSC was the U.S. parent of a group of corporations that joined in the filing of a consolidated Federal income tax return. *See* § 1501. CSC and its subsidiaries engaged in various aspects of the information technology business. CSC had its principal place of business in Virginia when the Petition was timely filed. Absent stipulation to the contrary, this case is appealable to the U.S. Court of Appeals for the Fourth Circuit. *See* § 7482(b)(1)(B).

During FY2013 CSC sold its credit services business and realized a large capital gain. With a view to offsetting this gain CSC engaged in "Project Trinity," a structured financing transaction. It involved two principal steps. First, CSC contributed stock of one wholly owned subsidiary—on which it had a large built-in loss—to another wholly owned subsidiary in exchange for three classes of securities, which CSC characterized as "senior participating preferred stock," "junior preferred stock," and a senior note. Applying section 358(b), CSC allocated to the senior preferred stock the bulk of its basis in the stock thus contributed. Several days later, CSC sold the senior preferred stock and the note to the Bank of Tokyo-Mitsubishi UFJ for cash. When the dust settled, CSC allegedly recognized, on this sale of securities, a long-term capital loss of $651,200,000.

CSC timely filed Form 1120, U.S. Corporation Income Tax Return, for FY2013, reporting the capital loss. It attached to its return a Form 8886, Reportable Transaction Disclosure Statement, in which it allegedly disclosed all relevant facts affecting Project Trinity and the capital loss deduction.

The IRS selected CSC's FY2013 return for examination and assigned the case to Revenue Agent (RA) Steven Herrera in the Large Business & International Division. At that time Supervisory RA Richard Guastello served as Mr. Herrera's acting team manager and thus as his immediate supervisor. Mr. Guastello's immediate supervisor was Renee Bowers, the acting territory manager.

In March 2017, as the examination neared completion, RA Herrera proposed to disallow petitioner's capital loss deduction and to assert, with respect to that disallowance, a 20% penalty for an underpayment due to a substantial understatement of income tax. *See* § 6662(a), (b)(2), (d)(1)(B). His recommendation to this effect was set forth in a

Form 5701, Notice of Proposed Adjustment (NOPA). RA Herrera has averred under penalties of perjury that he conducted the examination of petitioner's return and that he "made the initial determination" to assert this penalty.

On March 22, 2017, RA Herrera sent the draft NOPA to Mr. Guastello, his immediate supervisor. The NOPA proposed to assert, with respect to disallowance of the capital loss, a 20% accuracy-related penalty for an underpayment due to a substantial understatement of income tax. That same day, Mr. Guastello approved RA Herrera's recommendation to assert this penalty by affixing his digital signature on the NOPA using Adobe software.

RA Herrera promptly notified CSC that the IRS was considering the assertion of this penalty. On March 23, 2017, CSC representatives met with the examination team to express their view that CSC had adequately disclosed the pertinent tax treatment and that there was a "reasonable basis" for such treatment. That same day RA Herrera prepared and sent to CSC a draft Information Document Request (IDR) seeking the company's position as to why this penalty should not be asserted. Rather than respond to this request, CSC asked that the draft IDR be withdrawn. On March 27, 2017, Ms. Bowers—Mr. Guastello's supervisor—affixed her signature to the NOPA, signifying her approval to assert the substantial understatement penalty.

On April 1, 2017, Mr. Guastello again approved RA Herrera's recommendation to assert this penalty by affixing his signature on a "Substantial Understatement Penalty" worksheet. This worksheet, which RA Herrera had filled out, sets forth a series of instructions to guide the RA through the penalty determination process. A signed copy of that worksheet is attached to Mr. Guastello's Declaration.

Step 6 of the worksheet asks whether Form 8275, Disclosure Statement, or Form 8275–R, Regulation Disclosure Statement, was attached to petitioner's FY2013 return. Having examined CSC's return, RA Herrera correctly answered "No" to that question. The worksheet accordingly directed him to skip Step 7—which asked, "Does the taxpayer have a reasonable basis for the tax treatment of the item?"—and "[g]o to step 8."

Step 8 asks: "Does the taxpayer meet the reasonable cause exception?" To answer that question RA Herrera was directed to "[c]omplete the [attached] reasonable cause worksheet," which he did. On that

worksheet he indicated that CSC had "claimed privilege on the tax opinion" it had received regarding Project Trinity, so that the tax opinion "cannot be relied upon in claiming the reasonable cause exception." RA Herrera accordingly marked the "No" box at Step 8, leading to the conclusion that "[t]he penalty applies."

Mr. Guastello signed this worksheet as "Team Manager" on April 1, 2017. He placed his signature in the section captioned "Managerial approval is required." He thereby indicated that he had "reviewed and approved" the substantial understatement penalty as set forth on the worksheet.

RA Herrera's case activity record recites that he and Mr. Guastello met again with petitioner's representatives on April 7, 2017, "to discuss assessment of the IRC 6662(d) . . . penalty." During this meeting they appear to have addressed (among other things) the potential applicability of the penalty and the penalty defense CSC advanced. Mr. Guastello's handwritten notes from the meeting record CSC's argument that no penalty should apply because it had "flagged [the] issues," an apparent reference to the Form 8886 attached to its FY2013 return. On April 12, 2017, CSC made an additional submission to the examination team, arguing that no penalty should be asserted in the light of its tax return disclosures and IDR responses. On April 21, 2017, Mr. Guastello nevertheless approved—for a third time—RA Herrera's determination to assert the substantial understatement penalty by initialing his approval on a civil penalty leadsheet.

On May 15, 2017, the IRS sent petitioner Letter 950 (commonly called a "30-day letter"), signed by Mr. Guastello, RA Herrera's immediate supervisor. He attached to that letter Form 4549–A, Income Tax Examination Changes, which included the substantial understatement penalty. This document constituted the first formal communication to CSC that the IRS intended to assert this penalty.

Petitioner filed a Protest to the 30-day letter, seeking review by the IRS Independent Office of Appeals (Appeals). RA Herrera's case activity record shows that he spent dozens of hours between October 2017 and May 2018 working on a rebuttal to the penalty-related arguments petitioner advanced in its Protest. Appeals was ultimately unpersuaded by petitioner's arguments.

On February 16, 2021—almost four years after Mr. Guastello first approved the penalty—Appeals issued petitioner a Notice of Deficiency

that determined a deficiency of \$276,535,161 and a substantial understatement penalty of \$45,584,000. Petitioner timely petitioned this Court seeking a redetermination of the deficiency and the penalty.[2]

On April 25, 2025, respondent filed a Motion for Partial Summary Judgment seeking a ruling that the IRS complied with the requirements of section 6571(b)(1) by securing timely supervisory approval for the penalty. Petitioner filed a Response to the Motion on May 28, 2025, and the next day filed a Cross-Motion for Partial Summary Judgment. In these filings petitioner contends that the APA "applies to the prerequisite under section 6751(b) for supervisory approval and requires reasoned decisionmaking by the IRS supervisor in approving the determination of a penalty." Petitioner asserts that Mr. Guastello, RA Herrera's immediate supervisor, did not "meaningfully review" the penalty recommendation because he did not consider whether CSC might have a "reasonable basis" defense to the penalty. Petitioner urges that Mr. Guastello's approval should therefore be set aside under 5 U.S.C. § 706(2)(A) as agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

*Discussion*

I.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. However, where the moving party properly makes and supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). We find no genuine dispute of material fact on the question

---

[2] In the Notice of Deficiency the IRS also determined a 20% penalty for negligence or disregard of rules or regulations and/or valuation misstatement. *See* § 6662(b)(1), (3). In September 2023 respondent notified petitioner that he was conceding those penalties. We accordingly need not consider whether supervisory approval was secured for them.

addressed in this Opinion—whether the penalty, though timely approved by the RA's immediate supervisor, should be set aside because of alleged noncompliance with the APA.[3]

## II.    *Analysis*

### A.    *The Statutory Requirements*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 14–15 (2020), we ruled that the "initial determination" of a penalty assessment is typically embodied in a letter by which the IRS formally notifies the taxpayer that it has made a definite decision to assert penalties. Supervisory approval need not be recorded on any particular form or document; the only requirement is a writing that manifests the immediate supervisor's intent to approve the penalty. *Tribune Media Co. v. Commissioner*, T.C. Memo. 2020-2, 119 T.C.M. (CCH) 1006, 1010–11.[4]

As previously stated, this case is presumptively appealable to the Fourth Circuit. That court has not squarely addressed the question of *when* supervisory approval must be secured.[5] Other appellate courts

---

[3] Petitioner contends in the alternative that it has established a "reasonable basis" defense to the penalty as a matter of law. *See* § 6662(d)(2)(B)(ii) (providing that no penalty applies if "the relevant facts affecting [an] item's tax treatment are adequately disclosed" and "there is a reasonable basis for the tax treatment of such item"). Finding a genuine dispute of material fact on this point, we will deny petitioner's Cross-Motion to the extent predicated on this alternative ground, but without prejudice to its ability to advance this defense at trial.

[4] Because CSC is a corporation, respondent has no burden of production to show compliance with section 6751(b)(1). *See Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 231–32 (2018) (citing *NT, Inc. v. Commissioner*, 126 T.C. 191 (2006)). Petitioner is nevertheless entitled to assert noncompliance with the statute as a defense to the penalty. *See Dynamo Holdings*, 150 T.C. at 237.

[5] In *Brooks v. Commissioner*, 109 F.4th 205, 221 (4th Cir. 2024), *aff'g* T.C. Memo. 2022-122, the Fourth Circuit affirmed our Court's holding that the IRS had established compliance with section 6751(b)(1) by producing a "Civil Penalty Approval Form, which documented that an IRS manager had approved the [initial determination] of a penalty" against the taxpayers. But the Fourth Circuit in that case did not address in detail the statute's substantive requirements; it simply held that our Court did not abuse its discretion by admitting the Civil Penalty Approval Form into evidence. *See Brooks v. Commissioner*, 109 F.4th at 221–22.

have ruled that supervisory approval is timely if secured "before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020); *accord Swift v. Commissioner*, 144 F.4th 756 (5th Cir. 2025) (adopting formulation set forth in *Laidlaw's*), *aff'g* T.C. Memo. 2024-13; *Minemyer v. Commissioner*, Nos. 21-9006, et al., 2023 WL 314832, at *5 (10th Cir. Jan. 19, 2023), *aff'g in part, rev'g in part and remanding* T.C. Memo. 2020-99; *Chai v. Commissioner*, 851 F.3d 190, 220 (2d Cir. 2017) (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it"), *aff'g in part, rev'g in part* T.C. Memo. 2015-42; *cf. Kroner v. Commissioner*, 48 F.4th 1272, 1278, 1279 n.1 (11th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or before the relevant supervisor loses discretion whether to approve the penalty assessment), *rev'g in part* T.C. Memo. 2020-73.[6]

The record establishes that RA Herrera, who conducted the CSC return examination, made the "initial determination" to assert the section 6662 penalty. The record also establishes that Mr. Guastello was RA Herrera's "immediate supervisor" at all relevant times. Petitioner does not dispute either of these facts.

The record further establishes that Mr. Guastello approved, on four separate occasions, RA Herrera's initial determination to assert the penalty. He did so: (1) by affixing his electronic signature to the NOPA on March 22, 2017, using Adobe software, (2) by placing his signature on the "Substantial Understatement Penalty" worksheet on April 1, 2017, (3) by initialing his approval on the civil penalty leadsheet on April 21, 2017, and (4) by signing the 30-day letter dated May 15, 2017. As noted above, supervisory approval may be shown by the signature of the revenue agent's manager on any form or document, including a 30-day letter. *See Belair Woods*, 154 T.C. at 14–15; *Tribune Media Co.*, 119 T.C.M. (CCH) at 1010–11.

---

[6] The Treasury Department recently issued regulations that are consistent with the consensus of the appellate courts discussed in the text. These regulations provide that, for penalties included in a notice of deficiency, section 6751(b)(1) is satisfied "if the immediate supervisor of the individual who first proposed the penalty personally approves the penalty in writing on or before the date the notice is mailed." Treas. Reg. § 301.6751(b)-1(c). This regulation is effective for all penalties assessed on or after December 23, 2024. *Id.* para. (f).

The IRS first communicated to petitioner its intention to assert the penalty on May 15, 2017, when it mailed the 30-day letter with the enclosed examination report. As of that date—and as of the later date when the Notice of Deficiency was mailed—the IRS examination remained at a stage where Mr. Guastello had discretion to approve or disapprove the penalty recommendation. Therefore, under a reading of the appellate case law most favorable to petitioner, the IRS complied with section 6751(b)(1) because Mr. Guastello timely approved the substantial understatement penalty and did so in writing.

While not disputing the timeliness of Mr. Guastello's approval, petitioner contends that the "bare signatures of IRS employees" are insufficient to satisfy the statute's requirements. Although Mr. Guastello supplied written approval for RA Herrera's penalty recommendation four times—on four distinct documents—petitioner insists that Mr. Guastello did not conduct a "meaningful review." That is because Mr. Guastello assertedly failed "to evaluate, or even consider," the availability of a reasonable basis defense to CSC.

One definition of the verb "approve," petitioner says, is "to sanction officially" or "to give formal or official sanction." "In order to officially sanction the penalty determination," petitioner urges, "a supervisor's personal written approval . . . requires a reasoned decision regarding the facts of a particular taxpayer." And that supposedly requires the supervisor to provide a "narrative explanation" for his action.

Petitioner concedes that Tax Court precedent supplies no support for its argument. We have repeatedly "'decline[d] to read into section 6751(b)(1) the subtextual requirement' that respondent demonstrate the depth or comprehensiveness of the supervisor's review." *Belair Woods*, 154 T.C. at 17 (quoting *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 28). Faced with assertions that IRS officers gave insufficient consideration to the matters before them, we have ruled such lines of inquiry "immaterial and wholly irrelevant to ascertaining whether respondent complied with the written supervisory approval requirement." *Patel v. Commissioner*, T.C. Memo. 2020-133, 120 T.C.M. (CCH) 211, 214 (quoting *Raifman*, 116 T.C.M. (CCH) at 27–28); *see Estate of Morrissette v. Commissioner*, T.C. Memo. 2021-60, 121 T.C.M. (CCH) 1447, 1474.

Section 6751(b)(1) does not inquire into the time or effort the supervisor devotes to his task. Rather, as we have said before: "The written supervisory approval requirement . . . requires just that: written

supervisory approval.*" Pickens Decorative Stone, LLC v. Commissioner*, T.C. Memo. 2022-22, 123 T.C.M. (CCH) 1127, 1130 (quoting *Raifman*, 116 T.C.M. (CCH) at 28). We have consistently held that a manager's signature on a NOPA or penalty approval form—without more—is sufficient to satisfy the statutory requirements. *See Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75 (2019); *Green Valley Invs., LLC v. Commissioner*, T.C. Memo. 2025-15, at *35. And we have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g., Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021); *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2, 123 T.C.M. (CCH) 1008, 1009.

We find nothing in the statute to support petitioner's position. Section 6751 is captioned "Procedural requirements." Subsection (a) requires that notices sent to taxpayers include a computation of any penalty asserted. Subsection (b), captioned "Approval of assessment," requires that the initial determination of a penalty be "personally approved (in writing) by the immediate supervisor of the individual making such determination," unless the penalty is "automatically calculated through electronic means." *See* § 6751(b)(1), (2)(B).

Contrary to petitioner's view, we find no suggestion in this statute that the supervisor, when supplying his approval, must provide "a reasoned decision regarding the facts of [the] particular taxpayer." The statute requires only that the penalty be "personally approved" by the supervisor and that his approval be manifested "in writing." Petitioner itself defines "approve" as meaning "to give formal or official sanction." By affixing his signature on an official IRS document, accompanied by a representation that he reviewed and approved RA Herrera's recommendation, Mr. Guastello "gave formal or official sanction" to the initial determination to assert the penalty. We thus reject today, as we have consistently rejected before, the argument that "signatures on a NOPA do not constitute supervisory approval within the meaning of section 6751(b)."

The current consensus of the appellate courts is that the statute also contains an implicit timing requirement: Supervisory approval must be secured "before the relevant supervisor loses discretion whether to approve" or disapprove the penalty. *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1074; *see supra* pp. 8–9. Once a supervisor has lost such discretion—e.g., after the taxpayer has been held liable for a penalty in a final judicial decision—the supervisor's "approval" of the penalty would be meaningless. The courts have

accordingly held that supervisory approval must be meaningful from a temporal standpoint—i.e., that it not come so late as to be a vain act. No court has ever held that section 6751(b)(1) requires a supervisor to supply—in addition to timely written approval—any particular level of substantive review. *See Thompson v. Commissioner*, 155 T.C. 87, 93 (2020) (rejecting argument that penalty should not apply because an acting supervisor was supposedly incapable of engaging in "meaningful review").

B.   *Petitioner's Arguments*

Petitioner invokes the APA in an effort to sidestep the judicial precedents discussed above.   Specifically, it relies on 5 U.S.C. § 706(2)(A), which directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   CSC contends that the APA "applies to the prerequisite under section 6751(b) for supervisory approval and requires reasoned decisionmaking by the IRS supervisor in approving the determination of a penalty."

In advancing this argument petitioner focuses chiefly on one of the four approvals Mr. Guastello supplied for the penalty—namely his signature, dated April 1, 2017, on the "Substantial Understatement Penalty" worksheet.  According to petitioner, this document shows the inadequacy of Mr. Guastello's review by demonstrating that he paid insufficient attention to the possible availability of a reasonable basis defense.

Petitioner characterizes the worksheet (unflatteringly) as a "check-the-box exercise."  As noted above, Step 6 of the worksheet asks whether one of two disclosure forms—Form 8275 or Form 8275–R—was attached to CSC's FY2013 return.  Having examined that return, RA Herrera correctly answered "No" to that question.  The worksheet accordingly directed him to skip Step 7, which concerned the reasonable basis defense, and "[g]o to step 8."

In petitioner's view, this worksheet was "designed to categorically ignore any disclosure other than a disclosure made on Form 8275 or 8275–R."  CSC contends that it can qualify for the reasonable basis defense because it disclosed its treatment of the Project Trinity transaction on Form 8886, which was attached to its return.  Because the worksheet directed RA Herrera to skip Step 7—and thus to bypass the reasonable

basis defense—petitioner urges that "IRS management failed to evaluate, or even consider, the adequacy of [CSC's] disclosure [on Form 8886] in determining whether a reasonable basis defense could preclude the application of the . . . penalty."

We reject petitioner's line of argument for four independently sufficient reasons. First, we are reviewing the propriety of the penalty in a deficiency case, and the APA's judicial review provisions do not apply to Tax Court deficiency proceedings. Second, a supervisor's approval to assert a penalty does not constitute "final agency action" reviewable under 5 U.S.C. §§ 704 and 706(2)(A). Third, if Mr. Guastello's approval were thought to constitute final agency action, it would not be subject to distinct judicial review under 5 U.S.C. § 704 because our review in this deficiency case affords petitioner an "adequate remedy in a court." Finally, if the APA's requirement of "reasoned decision making" were deemed to apply, review of that question would be on the administrative record, and the examination case file shows that Mr. Guastello satisfied this requirement.

### 1. *Inapplicability of APA to Deficiency Proceedings*

The APA's judicial review provisions do not apply to our review of the Commissioner's compliance with section 6751(b)(1). We undertake that review in the exercise of the jurisdiction granted us by sections 6213 and 6214(a) to "redetermine the correct amount of [a taxpayer's] deficiency." Although petitioner characterizes section 6751(b)(1) as "a standalone basis to invalidate penalties," no provision of the Code—or of any other statute—grants us jurisdiction to determine respondent's compliance with section 6751(b)(1) as an abstract, stand-alone, matter.

It is well established that the APA's judicial review provisions do not apply to deficiency proceedings in this Court. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The deficiency procedures now set forth in chapter 63, subchapter B of the Code long predated the APA's enactment. *See QinetiQ US Holdings, Inc. & Subs. v. Commissioner*, 845 F.3d 555, 560 (4th Cir. 2017), *aff'g* T.C. Memo. 2015-123; *Ax v. Commissioner*, 146 T.C. 153, 162–63 (2016). As a result, "the de novo review procedures provided by the Internal Revenue Code, rather than the judicial review procedures under the APA, govern judicial review of deficiency proceedings." *QinetiQ US Holdings, Inc. & Subs. v. Commissioner*, 845 F.3d at 560 n.3; *see O'Dwyer v. Commissioner*, 266 F.2d 575, 580 (4th Cir. 1959)

("[T]he Tax Court is not subject to the Administrative Procedure Act."), *aff'g* 28 T.C. 698 (1957).

Petitioner dismisses these judicial precedents as "stand[ing] for the unremarkable proposition that the APA's judicial review provisions do not replace the system for judicial review in a deficiency proceeding." CSC acknowledges that "[t]he deficiency itself is subject to de novo review." But it insists that "the APA still applies to judicial review of final agency action that *is separate from* the deficiency proceeding."

Contrary to petitioner's assertion, our review of respondent's compliance with section 6751(b)(1) is not "separate from the deficiency proceeding." Because penalties must be "assessed, collected, and paid in the same manner of taxes," § 6665, our jurisdiction to redetermine a deficiency requires us to determine the appropriateness of any penalty determined in the deficiency notice. In *Graev v. Commissioner* (*Graev III*), 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016), we held that the Commissioner generally bears the burden of production regarding penalty approval because "compliance with section 6751(b) is properly at issue in [a] deficiency case."

Since *Graev III* we have consistently considered the Commissioner's compliance with section 6751(b)(1) in exercising our deficiency jurisdiction. We do so because the statute precludes "assessment" of a penalty absent supervisory approval, and no purpose would be served by upholding a penalty the Commissioner could not assess. The reason we are evaluating the IRS's compliance with section 6751(b)(1) in this case is that our deficiency jurisdiction requires us to redetermine penalties. Given petitioner's assignment of error to the IRS's determination of a substantial understatement penalty, satisfaction of the supervisory approval requirement is a necessary consideration in our decision whether to uphold that penalty. Simply put, our consideration of respondent's compliance with section 6751(b)(1) is *a part of*—not separate from—this deficiency case.

As petitioner observes, Congress enacted section 6751(b)(1) in 1998, more than 50 years after the APA was enacted. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3306(a), 112 Stat. 685, 744. But this is of no moment: Section 6751(b)(1) did not establish a new *procedure* for our review of IRS action in a deficiency case, but simply added a novel requirement for the assessment of some penalties. The fact that a requirement relevant in redetermining a deficiency or penalty was enacted after the APA does

not bring that portion of a deficiency case within the ambit of the APA's judicial review provisions. Nowadays many (if not most) of the Code provisions relevant to our redetermination of deficiencies and penalties were enacted after the APA became law. The important point is that the *procedures* under which we exercise our deficiency jurisdiction were established long before the APA was enacted.

Petitioner argues that "approval under section 6751(b) is a distinct statutory requirement—a fundamental prerequisite for the application of the penalty—that the Commissioner must satisfy irrespective of this Court's review of a notice of deficiency under section 6213." But petitioner is asking us to review respondent's compliance with that "distinct statutory requirement" in the exercise of our jurisdiction under sections 6213 and 6214(a). Even if the APA allowed stand-alone judicial review of the Commissioner's compliance with section 6751(b)(1)—which, for the reasons explained below, it does not—we would have no jurisdiction to conduct that species of APA judicial review in a deficiency proceeding such as this.[7]

### 2. *"Final Agency Action"*

Even if our review of respondent's compliance with section 6751(b)(1) could somehow be separated from our exercise of the deficiency jurisdiction petitioner has invoked, we would nonetheless conclude that the APA's judicial review provisions, including 5 U.S.C. § 706(2)(A), would not apply to that review. Those provisions apply to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Petitioner cites no statute that specifically provides for review of a supervisor's grant of approval under section 6751(b)(1). And 5 U.S.C. § 704 does not itself provide for such review for two reasons, the first of which is that a supervisor's approval of a penalty is not "final agency action."

---

[7] The question whether the IRS complied with section 6751(b)(1) can of course arise in other litigation scenarios. If a taxpayer challenged its underlying liability in a collection due process (CDP) case, and if it urged noncompliance with the supervisory approval requirement as a defense to a penalty, we would review that question in the exercise of our CDP jurisdiction under section 6330(c)(2)(B) and (d)(1). Or if a taxpayer urged noncompliance with the supervisory approval requirement as a defense to a penalty in a tax refund suit, the district court would review that question in the exercise of its refund jurisdiction under 28 U.S.C. § 1346(a)(1). In neither case would judicial review be exercised under the APA.

Petitioner contends that supervisory approval constitutes "final agency action" because it is "specific and discrete and therefore reviewable under the APA." As petitioner observes, a party challenging agency action "must . . . identify specific and discrete governmental conduct." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019); *see Norton v. S. Utah Wilderness All.* (*SUWA*), 542 U.S. 55, 64 (2004) (ruling that the "limitation to discrete agency action precludes . . . broad programmatic attack" on an agency's operations). We will assume that Mr. Guastello's approvals of RA Herrera's penalty recommendation could be characterized as "specific and discrete governmental conduct." For the APA to govern our review of that conduct, however, the action would have to be, not only specific and discrete, but also "final." 5 U.S.C. § 704; *SUWA*, 542 U.S. at 61–62 ("Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'").

Agency action is generally considered "final" if two conditions are met. *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the 'consummation' of the agency's decisionmaking process." *Id.* at 177–78 (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). In other words, the action "must not be of a merely tentative or interlocutory nature." *Id.* at 178. "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). The Supreme Court suggested that legal consequences might flow from agency action if it "alter[s] the legal regime to which the agency action is subject." *Id.*

A supervisor's approval of a penalty recommendation satisfies neither of the *Bennett* conditions. First, the supervisor's placement of a signature on a penalty approval form does not represent the "consummation of the [IRS's] decisionmaking process" in any sense of the word. *Cf. id.* Following supervisory approval of a penalty, the examination team may offer the taxpayer the opportunity to provide additional information regarding penalty defenses. After receiving that information, the examination team may elect to drop or reduce the penalty, or it may decide to assert alternative penalties for which it has stronger support. If the examination team adheres to a particular penalty in the 30-day letter, the taxpayer may seek review by Appeals. After evaluating the hazards of litigation, Appeals may drop or reduce the penalty as part of an overall settlement. In short, following an IRS examination of a taxpayer's return, the "consummation of the agency's decisionmaking

process" is reflected in the notice of deficiency. That notice sets forth the penalty the IRS has finally determined to be applicable. Supervisory approval is just one step along the way: While it is a necessary condition for the ultimate determination of a penalty, it is by no means sufficient.

The facts of this case illustrate the "interlocutory nature" of supervisory approval. *See id.* Mr. Guastello first approved assertion of the substantial understatement penalty on March 22, 2017. The following day, CSC representatives met with the examination team to express their view that CSC had adequately disclosed the relevant facts and that there was "a reasonable basis" for its treatment. RA Herrera then sent petitioner a draft IDR seeking the company's position as to why the penalty should not be asserted.

After CSC asked that the IDR be withdrawn, Mr. Guastello approved the penalty a second time on April 1, 2017, by signing the "Substantial Understatement Penalty" worksheet. Notwithstanding that approval, RA Herrera and Mr. Guastello met with petitioner's representatives again on April 7, 2017, "to discuss assessment of the IRC 6662(d) . . . penalty." On April 12, 2017, CSC made an additional submission to the examination team, arguing that no penalty should be asserted in the light of its tax return disclosures and IDR responses. Having reviewed that submission, Mr. Guastello nevertheless approved assertion of the penalty for a third time on April 21, 2017, by initialing his approval on a civil penalty leadsheet.

On May 15, 2017, the IRS sent CSC a 30-day letter (signed by Mr. Guastello) that included the penalty. It filed a Protest seeking review by Appeals. RA Herrera's case activity record shows that he spent dozens of hours between October 2017 and May 2018 working on a rebuttal to the penalty-related arguments petitioner advanced in its Protest.

Appeals was ultimately unconvinced by petitioner's arguments. On February 16, 2021—almost four years after Mr. Guastello first approved the penalty—Appeals issued petitioner a Notice of Deficiency determining various deficiencies and (for FY2013) a substantial understatement penalty of $45,584,000. The decision by Appeals to include the penalty in the Notice of Deficiency was the "consummation of the agency's decision making process" with respect to the penalty. *Bennett,* 520 U.S. at 178. That action necessarily reflected a decision that was separate from—and subsequent to—Mr. Guastello's decision to approve the penalty in March 2017.

Our conclusion that supervisory approval of a penalty does not meet the first *Bennett* condition suffices to establish that it is not "final agency action" within the meaning of 5 U.S.C. § 704. But supervisory approval also fails the second *Bennett* condition because it is not an act "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (original quotation marks omitted).

Petitioner contends that "section 6751(b) approval directly affects a taxpayer's liabilities and obligations." That is supposedly so because "[a] proper approval permits the formal assessment of penalties," whereas "the lack of proper approval prevents" assessment. Petitioner's argument on the latter point appears to be that Mr. Guastello's approval had "legal consequences" because it denied petitioner the safe harbor it would supposedly have enjoyed if Mr. Guastello had *not* approved the penalty.

We are not persuaded. First, a supervisor's approval of a penalty, by itself, does not determine any *obligations* of the taxpayer because it does not make assessment of the penalty a foregone conclusion. It is not enough that supervisory approval might (in petitioner's words) "affect" a taxpayer's obligations. To satisfy the second *Bennett* condition, the agency action must *determine* liabilities or obligations. *Bennett*, 520 U.S. at 178. The challenged act must have "an immediate and practical impact." *City of New York*, 913 F.3d at 431 (quoting *Golden & Zimmerman LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010)).

Mr. Guastello's approval of the penalty had no immediate and practical impact and did not *determine* any obligation of CSC. Between the supervisor's action and the ultimate issuance of a deficiency notice, many events may occur that will result in a penalty's being eliminated or reduced. *See supra* pp. 16–17. A supervisor's approval of an initial determination to assess a penalty does not establish the taxpayer's liability for the penalty. Supervisory approval is but a step in a larger process that may or may not result in a penalty determination. Nor did Mr. Guastello's approval "alter the legal regime to which the agency action is subject." *Bennett*, 520 U.S. at 178. His approval was a routine action involving penalties specific to this particular taxpayer, and it had no effect on the "legal regime" governing penalties.

Second, the absence of supervisory approval does not determine any *rights* of the taxpayer because it does not insulate the taxpayer from a possible future penalty assessment. Had Mr. Guastello declined RA

Herrera's initial request for approval, petitioner would not have had immunity from the penalty for any period. An initial refusal by Mr. Guastello to approve the penalty might have indicated that RA Herrera had not yet done enough to develop his case. After further development of the issue, Mr. Guastello might have granted his approval. An initial withholding of approval would not have foreclosed that possibility.

Even if Mr. Guastello had not signified his approval—and if the IRS in consequence had not determined a penalty in the Notice of Deficiency—petitioner would still have had no immunity from the penalty. An IRS Chief Counsel attorney could assert the very same penalty in the Answer to the Petition (or by way of amendment to Answer) so long as that attorney secured approval from *his or her* immediate supervisor. *See Chai v. Commissioner*, 851 F.3d at 220–21; *Koh v. Commissioner*, T.C. Memo. 2020-77; *see also* Treas. Reg. § 301.6751(b)-1(e)(4) (example 4). The fact that the Examination Division had not secured approval to assert the penalty would not foreclose that possibility.

In sum, Mr. Guastello's approval did not determine any rights or obligations of CSC. His approval did not dictate that a penalty would ultimately be asserted, nor would his failure to grant approval have prevented assertion of a penalty. If Mr. Guastello had withheld his approval, the IRS could have asserted the same penalty later in appropriate circumstances. His approval did not have the "legal consequence[]" of denying a safe harbor that would otherwise have been available to CSC or of "alter[ing] the legal regime to which [the IRS] is subject." *Bennett*, 520 U.S. at 178. For these reasons, and because supervisory approval of a penalty does not constitute the "consummation of the agency's decision making process," *ibid.*, Mr. Guastello's action did not constitute "final agency action" under 5 U.S.C. § 704.

### 3. *"Adequate Remedy" in Court*

Even if we regarded Mr. Guastello's approval of the penalty as "final agency action," that action would not be subject to APA judicial review because petitioner has an "adequate remedy" in this Court for any noncompliance with section 6751(b)(1). *See* 5 U.S.C. § 704 (authorizing judicial review of final agency action "for which there is no other adequate remedy in a court"). If we were to accept petitioner's argument—contrary to our precedents—that the "bare signatures of IRS employees" do not meet the requirements of section 6751(b)(1), we would likely hold that the IRS had failed to secure proper supervisory approval for the penalty and thus decline to sustain it. Because this deficiency

proceeding affords CSC an adequate judicial remedy for the noncompliance it alleges, 5 U.S.C. § 704 would not authorize separate judicial review even if Mr. Guastello were thought to have engaged in "final agency action."

If petitioner were correct that Mr. Guastello's approval constituted "final agency action for which there [was] no other adequate remedy in a court," petitioner could have brought a separate lawsuit under the APA (necessarily in another court) to challenge Mr. Guastello's action. That petitioner did not do so suggests that it shares our view that this deficiency proceeding affords it an adequate judicial remedy for the noncompliance it alleges. It follows that 5 U.S.C. § 704 does not authorize judicial review—separate and apart from our deficiency jurisdiction—of respondent's compliance with the statute.[8]

### 4.  *"Reasoned Decision Making"*

Petitioner contends that Mr. Guastello's approval of the penalty must be set aside under 5 U.S.C. § 706(2)(A) as agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Although Mr. Guastello supplied his approval on four distinct documents over a period of two months, petitioner insists that his action did not satisfy the APA's requirement of "reasoned decision

---

[8] Petitioner errs by citing in support of its position the Second Circuit's opinion in *Chai v. Commissioner*, 851 F.3d 190. That case had nothing to do with the APA: The Second Circuit did not discuss any provision of 5 U.S.C., much less the circumstances in which a party would be deemed to have an "adequate remedy in a court" within the meaning of 5 U.S.C. § 704. The Second Circuit in *Chai* focused on the proper interpretation of section 6751(b)(1)—specifically, the *time* when supervisory approval must be secured and the obligation of our Court in a deficiency case to decide whether approval was timely secured. Reasoning that supervisory approval would be meaningful only if obtained at a time when "the supervisor has the discretion to give or withhold it," the Second Circuit held that section 6751(b)(1) requires written supervisory approval "no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty." *Chai v. Commissioner*, 851 F.3d at 220–21. As a corollary of that holding, the Second Circuit ruled that establishing compliance with section 6751(b)(1) is generally part of the Commissioner's burden of production in a deficiency case. *Chai v. Commissioner*, 851 F.3d at 221. Because the "written-approval requirement of § 6751(b)(1) is appropriately viewed as an element of a penalty claim," *id.* at 222, our Court in a deficiency case must consider—with respect to any penalty asserted—whether the IRS complied with the supervisory approval requirement. That is precisely what we are doing in this Opinion. The Second Circuit's analysis is perfectly consistent with our conclusion that this deficiency proceeding—if one were to adopt APA terminology—affords petitioner an "adequate remedy in a court."

making." *Cf. Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52 (1983).

Petitioner acknowledges our precedents holding that the IRS need not "demonstrate the depth or comprehensiveness of the supervisor's review." *See Belair Woods*, 154 T.C. at 17. But CSC contends that Mr. Guastello's action "did not simply lack 'depth.'" In so contending it focuses on the approval he granted on April 1, 2017, when he affixed his signature on the "Substantial Understatement Penalty" worksheet. In petitioner's view, that action was "fundamentally defective because the [worksheet] prevented Exam (and, concomitantly, the relevant supervisor) from considering to any extent—in depth or otherwise—the adequacy of CSC's disclosure on the . . . Form 8886 and whether there was a reasonable basis" for its position.

Were we to conclude that the APA governed our review of Mr. Guastello's approval, that review would be predicated on the administrative record. *See Kasper v. Commissioner*, 150 T.C. 8, 14–15 (2018) ("The general rule under the Administrative Procedure Act . . . is that 'review of an agency decision is limited to the administrative record.'" (quoting *Wilson v. Commissioner*, 705 F.3d 980, 991 (9th Cir. 2013), *aff'g* T.C. Memo. 2010-134)). Because this is a deficiency case, there is of course no "administrative record" in a literal sense. But the parties have attached to their Motion papers the documents from the IRS examination file they believe relevant in deciding the section 6751(b)(1) question. Our review of these documents convinces us that Mr. Guastello *did engage* in reasoned decision making because they show that he *did consider* the availability vel non of a reasonable basis defense.

To establish a reasonable basis defense, the taxpayer must demonstrate (among other things) that "the relevant facts affecting the item's tax treatment [were] adequately disclosed in the return or in a statement attached to the return." § 6662(d)(2)(B)(ii)(I). Treasury Regulation § 1.6662-4(f)(1) provides that "[d]isclosure is adequate with respect to an item . . . or a position on a return if the disclosure is made on a properly completed form attached to the return." The regulation specifies that this disclosure "must be made" on one of two Disclosure Statements: Form 8275 ("[i]n the case of an item or position other than one that is contrary to a regulation") or Form 8275–R ("in the case of a position contrary to a regulation"). *Id.*

Petitioner's FY2013 return did not include Form 8275 or Form 8275–R. Step 6 of the Substantial Understatement Penalty worksheet

asked RA Herrera whether either of these Forms was attached to the return, and he correctly answered "No." The worksheet accordingly directed him to skip Step 7, which concerned the "reasonable basis" defense, and "[g]o to Step 8." This was not, as petitioner would have it, a mindless directive. It was a directive dictated by Treasury Regulation § 1.6662-4(f)(1), which specifies that a disclosure sufficient to qualify for the reasonable basis defense "must be made" on Form 8275 or Form 8275–R.

RA Herrera had no need to consider whether there was a reasonable basis for CSC's position because CSC did not disclose the relevant facts on Form 8275 or Form 8275–R, as the regulation requires. The regulation on its face foreclosed CSC's ability to urge a reasonable basis defense to the penalty. In considering whether that defense might be available to CSC, Mr. Guastello, like RA Herrera, needed to do no more than ascertain whether CSC's return included one of the Disclosure Forms specified in the regulation. Mr. Gaustello had no reason to second-guess RA Herrera's representation that the answer to that question was "No."

Petitioner asks us to hold that Treasury Regulation § 1.6662-4(f), which undergirds the instructions on the worksheet, "is contrary to law and invalid." Petitioner contends that the regulation "attempts to rewrite section 6662(d)(2)(B)(ii)(I)" by requiring that disclosure be made on Form 8275 or Form 8275–R, whereas the statute provides that disclosure may be made "in the return or in a statement attached to the return."

Petitioner is perfectly free to advance this argument at trial or in posttrial briefs. But the argument has no relevance in deciding the question we face now. Whether or not petitioner is correct, it was not incumbent on Mr. Guastello to judge the validity of Treasury Regulation § 1.6662-4(f)(1). We have repeatedly held that IRS officers do not abuse their discretion by following guidance set forth in the Internal Revenue Manual and other IRS pronouncements. *See Burl v. Commissioner*, T.C. Memo. 2025-40, at *4; *Zienkowski v. Commissioner*, T.C. Memo. 2024-39, at *9; *Mack v. Commissioner*, T.C. Memo. 2018-54, 115 T.C.M. (CCH)

1264, 1266. It follows a fortiori that they do not abuse their discretion by following a Treasury regulation.[9]

In sum, Mr. Guastello could properly accept the regulation as valid authority when approving RA Herrera's penalty recommendation. Assuming arguendo that APA principles were deemed relevant here, we would accordingly find that Mr. Guastello engaged in "reasoned decision making" when he concluded that the reasonable basis defense was not available to CSC.[10]

---

[9] Wholly apart from the worksheet discussed in the text, the examination file as a whole shows that Mr. Guastello considered CSC's possible penalty defenses. As explained in the NOPA proposing the penalty, CSC representatives met with the exam team on March 23, 2017, to express their view that CSC had adequately disclosed the pertinent tax treatment and that there was "a reasonable basis" for such treatment. Mr. Guastello's handwritten notes from the meeting record CSC's argument that no penalty should apply because it had "flagged [the] issues," an apparent reference to the Form 8886 attached to its FY2013 return. Mr. Guastello and RA Herrera met again with CSC's representatives on April 7, 2017, "to discuss assessment of the IRC 6662(d) . . . penalty." During this meeting they appear to have addressed once again the potential applicability of the penalty defenses CSC advanced. On April 12, 2017, CSC made an additional submission to the examination team, arguing that no penalty should be asserted in the light of its tax return disclosures and IDR responses. Having received all this information, Mr. Guastello nevertheless signified his approval of the penalty for a third time on April 21, 2017, by initialing the civil penalty leadsheet.

[10] Even if petitioner could prevail on all the arguments discussed in the text, it is not obvious that we would be required to set aside Mr. Guastello's approval of the penalty as "not in accordance with law." *See* 5 U.S.C. § 706(2)(A). By electronically signing the NOPA, signing the penalty worksheet, initialing the civil penalty leadsheet, and signing the 30-day letter, Mr. Guastello did what section 6751(b)(1) (as we have interpreted it) required him to do. We have consistently held that a manager's signature on a NOPA or penalty approval form—without more—is sufficient to satisfy the statutory requirements. *See Palmolive Bldg. Invs.*, 152 T.C. at 86; *Estate of Glassman v. Commissioner*, T.C. Memo. 2024-51, at *6; *Green Valley Invs.*, T.C. Memo. 2025-15, at *35. No court has ever interpreted section 6571(b)(1) to require the supervisor to produce what petitioner calls a "narrative explanation" of his approval. In short, even if the APA's judicial review provisions applied to our review, Mr. Guastello signified his approval "in accordance with" section 6751(b)(1) as the courts have uniformly construed that provision.

C. *Conclusion*

Because respondent has demonstrated compliance with section 6751(b)(1), we will grant his Motion for Partial Summary Judgment and deny petitioner's.

To implement the foregoing,

*An appropriate order will be issued.*